THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. CHRISTOPHER ANDERSON, Defendant-Appellee.

Third District   No. 3—87—0366

Opinion filed April 27, 1988.—Rehearing denied June 13, 1988.

Edward F. Masters, State's Attorney, of Joliet (Gary F. Gnidovec, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Mark D. Fisher, of State Appellate Defender's Office, of Ottawa, for appellee.

JUSTICE HEIPLE delivered the opinion of the court:

Christopher Anderson was indicted on a charge of murder following the shooting death of Vicki Scarabello. Anderson filed motions to quash his arrest and to suppress certain evidence, and after a hearing, the trial court granted the motions. The State brings this interlocutory appeal pursuant to Supreme Court Rule 604(a)(1) (107 Ill. 2d R. 604(a)(1)). We reverse and remand for further proceedings.

The State's recitation of facts, which was not controverted by the defendant, established the following. On the afternoon of November 20, 1986, Vicki Scarabello was killed by a gunshot to the head in a Park Forest, Illinois, apartment rental office where she was employed as a manager. Information obtained by Park Forest Detectives Carl Kuester and Patrick Fitzgerald indicated that a man fitting Anderson's description was the last potential apartment lessee to speak with the victim before she was murdered. The detectives also discovered that Anderson, who lived near the apartment complex where Scarabello was murdered, had a prior record for violent crimes and that his Illinois driver's license had been suspended.

The evidence adduced at the suppression hearing regarding the events surrounding Anderson's arrest and interrogation is set out below. Detective Kuester testified that on November 22, 1986, he and his partner, Detective Fitzgerald, proceeded in an unmarked car to the Bob Evans restaurant in the adjacent community of Matteson, Illinois, where Anderson was employed. They located a vehicle registered to Anderson in the parking lot and placed it under surveillance. Kuester admitted that at this time, he wished to speak to Anderson about the homicide.

A short time later, Anderson entered his car and drove a short distance to a shopping center's parking lot. The detectives followed Anderson and parked behind his car. They approached Anderson as he exited the car and Kuester identified himself as a Park Forest police officer. He asked Anderson to produce his driver's license, but Anderson stated that his license was suspended. Anderson was then advised that he was under arrest for driving with a suspended license. Fitzgerald asked Anderson for permission to look in his vehicle, and when Anderson consented to the search, Fitzgerald opened the car

door and looked inside.

Fitzgerald notified the Matteson police department of the traffic stop and asked that a marked car from Matteson be dispatched to the scene. The Matteson police department allowed the detectives to take Anderson to the Park Forest police department for questioning. Neither detective had a ticket book with him, and Anderson was not issued a citation for the offense at the scene or when he was taken to the Park Forest police station.

Upon his arrival at the Park Forest police department, Anderson was taken to the detective division office. Kuester orally advised him of his *Miranda* rights and Anderson indicated that he understood those rights. He was informed that a bond was required for the offense of driving while license suspended; Anderson did not ask to place a telephone call to obtain bond money.

Anderson was again asked for permission to search his car, and he consented verbally and by signing a form. Anderson's car was at that time in a municipal building adjacent to the police department, having been towed there at Kuester's request. After receiving Anderson's permission, Kuester and two officers conducted a thorough search of the car, looking for evidence of the Scarabello homicide. Several items were taken from the car, including a variety of live rounds of ammunition, a small gun case, and proposal forms from the apartment complex where Scarabello had been employed.

After completing the vehicle search, Kuester again advised Anderson of his constitutional rights, and on a written form, Anderson indicated that he understood each of his rights and was willing to answer questions without first speaking to an attorney. Kuester then informed Anderson that Park Forest police were investigating a serious crime and requested that he provide any information he had about the crime. Anderson was interrogated periodically over the next several hours; breaks for food, drink, and rest were taken.

During the course of the interrogation, Anderson stated that he previously possessed a small .22 caliber derringer but that he had recently thrown it into a creek. At some point in the evening after Anderson made this statement, he left the police station with Kuester and Fitzgerald and directed them to the location where he allegedly disposed of the gun. A search of that portion of the creek was conducted later, but the gun was not recovered.

During the interrogation, Anderson made statements admitting his involvement in the murder and he gave a voluntary written statement describing the circumstances surrounding Scarabello's shooting. He was placed under arrest on the murder charge and was incarcer-

ated at the Park Forest police department.

On the morning of November 23, Anderson asked the police to call attorney Dave McDermott. McDermott was telephoned and he conferred privately with Anderson later that day. Anderson also was allowed a brief visit with his girlfriend. After this visit, as he passed by Detective Kuester, Anderson told Kuester that he wanted to apologize for lying about the location of the gun and tell him where he actually threw the gun. Kuester interrupted Anderson to explain that since he had consulted with an attorney, he could not be questioned without his attorney present. Anderson stated that he understood that he did not have to answer any questions, but insisted on taking Kuester to the place where he had disposed of the gun. Kuester recited the *Miranda* rights to Anderson, who again stated he understood them, but wanted to take the detective to the gun. Anderson, Kuester, Fitzgerald, and a police officer then left the police station. Anderson directed them to a small creek a short distance from the station. He pointed out where the gun hit the water and, later, a .22 caliber derringer was recovered from the creek.

The defendant filed a motion to quash the arrest and suppress his confession and another motion to suppress the gun on grounds that the traffic arrest was an invalid pretextual arrest. The trial court found that the detectives made a valid arrest for driving on a suspended license, but that the suspended license arrest was a pretext used to place the defendant in a disadvantageous position where he could be questioned concerning the murder. The court then analyzed the detectives' subsequent actions under the objective standard applied by the United States Supreme Court in *Scott v. United States* (1978), 436 U.S. 128, 56 L. Ed. 2d 168, 98 S. Ct. 1717, and determined that the officers substantially deviated from their normal, customary procedures, and therefore violated Anderson's constitutional rights. The defendant's motions were granted and the evidence was suppressed. The State filed a certificate of inability to proceed with trial and then filed the instant appeal.

On appeal to this court, the State's primary argument is that the officers' subjective intentions at the time of a valid arrest cannot transform that valid arrest into an unlawful, pretextual arrest. The State contends that recent cases from the United States Supreme Court instruct that in evaluating alleged violations of the fourth amendment, courts are to conduct an objective assessment of the officer's actions in light of the facts and circumstances then known to him. (*E.g., Scott v. United States* (1978), 436 U.S. 128, 56 L. Ed. 2d 168, 98 S. Ct. 1717.) Under this analysis, the State argues that be-

cause the defendant was lawfully arrested for driving without a valid license, the officers' motives at the time of the arrest are irrelevant and do not retroactively invalidate this otherwise valid arrest. The defendant asserts that the *Scott* decision did not replace the pretextual arrest doctrine and that even under a *Scott* analysis, the officers' post-arrest conduct was not objectively reasonable and therefore it violated the fourth amendment. We disagree with the defendant and find that the evidence was erroneously suppressed.

■ According to the pretextual arrest doctrine, an arrest may not be used as a pretext to search for evidence, and evidence seized by means of a pretextual arrest is inadmissible. The tainted evidence is excluded under this theory in order to deter deliberate police misconduct and prevent law enforcement officers from being rewarded for their subterfuge. In *United States v. Lefkowitz* (1932), 285 U.S. 452, 76 L. Ed. 877, 52 S. Ct. 420, the Supreme Court first stated that an arrest may not be used as a pretext to search for evidence of a crime. However, in *Lefkowitz*, officers who had obtained a valid warrant to arrest the defendants for conspiracy to deliver liquor searched desks and wastebaskets and seized papers therein for use as evidence of the crime of which the defendants were accused, rather than some unrelated offense. Later, in *Abel v. United States* (1960), 362 U.S. 217, 4 L. Ed. 2d 668, 80 S. Ct. 683, the Federal Bureau of Investigation (FBI) suspected Abel was a Russian spy, but did not have sufficient evidence to arrest him, so it notified the Immigration and Naturalization Service (INS) that Abel might be an illegal alien. Acting pursuant to an administrative warrant, INS officers arrested Abel to determine whether he was residing illegally in the United States. Following the arrest, the FBI searched his room, evidence of espionage was obtained, and Abel was charged with conspiracy to commit espionage. Abel sought to suppress the evidence on grounds that the administrative warrant was a pretense and a sham and that the government's true purpose in arresting him was not to determine his deportability but to discover evidence of his espionage. In response, the Supreme Court stated:

> "Were this claim justified by the record, it would indeed reveal a serious misconduct by law-enforcing officers. The deliberate use by the Government of an administrative warrant for the purpose of gathering evidence in a criminal case must meet stern resistance by the courts. *** A finding of bad faith is, however, not open to us on this record." *Abel*, 362 U.S. at 226, 4 L. Ed. 2d at 678, 80 S. Ct. at 690.

See also *South Dakota v. Opperman* (1976), 428 U.S. 364, 49 L. Ed.

2d 1000, 96 S. Ct. 3092 (where the Court upheld a routine inventory search of the defendant's vehicle after it was impounded for multiple parking ordinance violations, finding that although the search yielded a bag of marijuana, there was no evidence that it was a pretext concealing an investigatory police motive).

Courts attempting to apply the pretextual arrest doctrine have been forced to inquire into the underlying intent or motivation of the officers involved to determine whether some secret, subjective purpose served as the actual basis for the arrest. However, one commentator has noted that it is doubtful whether it is within the ability of trial and appellate courts "to determine with any fair rate of success the uncommunicated intentions or expectations of the police officer." (2 W. LaFave, Search and Seizure §5.2(e), at 459 (2d ed. 1987).) Thus the unreliable and time-consuming expeditions into the motives of the searching officers have led to inconsistent results and often penalized officers who were accused of having bad thoughts even though they outwardly exhibited constitutionally appropriate behavior. Compare *People v. Thomas* (1979), 75 Ill. App. 3d 491, with *People v. Watkins* (1960), 19 Ill. 2d 11.

Although many State and lower Federal courts have continued to apply the pretextual arrest doctrine and have attempted to divine whether an officer had improper motives or bad thoughts which might invalidate otherwise permissible arrests and searches, the United States Supreme Court has repeatedly stated in its more recent cases that an officer's subjective intent is not a relevant factor to be used in determining whether fourth amendment violations occurred. In *Scott v. United States* (1978), 436 U.S. 128, 56 L. Ed. 2d 168, 98 S. Ct. 1717, Federal agents placed a wiretap on a telephone they believed was being used by narcotics dealers in furtherance of their conspiracy to import and distribute drugs. The agents made no attempt to comply with a portion of the surveillance statute requiring that such activities be conducted so as to minimize their interception of nondrug-related conversations. The district court ordered suppression of the intercepted calls and the derivative evidence because it was offended by the officers' motives and the absence of any attempts to comply with the minimization requirements. In upholding a reversal of the district court, the Supreme Court found that the agents' interception of all of the calls was reasonable under the circumstances of the case and emphatically rejected a proposed examination of the agents' motives. The Court stated:

> "[A]lmost without exception in evaluating alleged violations of the Fourth Amendment the Court has first undertaken an ob-

jective assessment of an officer's actions in light of the facts and circumstances then known to him. The language of the Amendment itself proscribes only 'unreasonable' searches and seizures. In *Terry v. Ohio*, [(1968), 392 U.S. 1, 21-22, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868, 1880], the Court emphasized the objective aspect of the term 'reasonable.' ***

We have since held that the fact the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action. In *United States v. Robinson*, 414 U.S. 218, 38 L. Ed. 2d 427, 94 S. Ct. 467 (1973), a suspect was searched incident to a lawful arrest. He challenged the search on the ground that the motivation for the search did not coincide with the legal justification for the search-incident-to-arrest exception. We rejected this argument: 'Since it is the fact of custodial arrest which gives rise to the authority to search, it is of no moment that [the officer] did not indicate any subjective fear of the respondent or that he did not himself suspect that respondent was armed.' Id., at 236, [, 38 L. Ed. 2d at 441, 94 S. Ct. at 477]. The Courts of Appeals which have considered the matter have likewise generally followed these principles, first examining the challenged searches under a standard of objective reasonableness without regard to the underlying intent or motivation of the officers involved." *Scott*, 436 U.S. at 137-38, 56 L. Ed. 2d at 177-78, 98 S. Ct. at 1723.

The Supreme Court acknowledged in *Scott* that motives are not always to be disregarded in a suppression inquiry, but stated that this focus on intent becomes relevant only after a court determines that the Constitution was in fact violated. *Scott*, 436 U.S. at 139 n.13, 56 L. Ed. 2d at 178 n.13, 98 S. Ct. at 1724 n.13.

In *United States v. Villamonte-Marquez* (1983), 462 U.S. 579, 77 L. Ed. 2d 22, 103 S. Ct. 2573, customs officers received an informant's tip that drugs were being carried on a ship. Accompanied by a State policeman, the officers boarded the vessel to examine the ship's documentation as authorized by Federal statute. After observing drugs on the ship, the officers arrested two men on board who were subsequently convicted of drug-related offenses. The court of appeals reversed, finding that the officers' boarding was not reasonable under the fourth amendment. The Supreme Court reversed and upheld the convictions. In response to the defendants' assertions that the customs officers could not rely on the statute authorizing boarding for in-

spection of the vessel's documentation because they were acting on an informant's tip about drugs, the Court curtly stated, "This line of reasoning was rejected in a similar situation in *Scott v. United States* [citation], and we again reject it." (*Villamonte-Marquez*, 462 U.S. at 584 n.3, 77 L. Ed. 2d at 18 n.3, 103 S. Ct. at 2577 n.3.) The officers acted with legal authority when they boarded the ship, and the Court refused to find that their motives somehow invalidated that authority.

Finally, in *Maryland v. Macon* (1985), 472 U.S. 463, 86 L. Ed. 2d 370, 105 S. Ct. 2778, where officers purchased allegedly obscene magazines with marked money, the defendant argued that because the officer subjectively intended to retrieve the money while retaining the magazines, the purchase was tantamount to a warrantless seizure. The Supreme Court found this argument meritless and, again, citing *Scott v. United States*, stated that whether a fourth amendment violation occurred turns on an objective evaluation of the officer's actions in light of the facts and circumstances then known to him and not on the officer's state of mind at the time the challenged action was taken. The Court then stated, "Objectively viewed, the transaction was a sale in the ordinary course of business. The sale is not retrospectively transformed into a warrantless seizure by virtue of the officer's subjective intent to retrieve the purchase money to use as evidence." *Macon*, 472 U.S. at 471, 86 L. Ed. 2d at 378, 105 S. Ct. 2783.

Although the Supreme Court did not expressly renounce the pretextual arrest doctrine in the foregoing cases, it stated repeatedly that in analyzing alleged fourth amendment violations, an objective assessment of the officer's actions, not his state of mind, is what matters. The pretext approach clearly is not the prevailing approach of the United States Supreme Court in determining whether a defendant's fourth amendment rights have been violated. Rather, in cases indistinguishable in principle from the case at bar, the Supreme Court has repeatedly ruled that when police officers do no more than they are objectively authorized and legally permitted to do, their motives in doing so are irrelevant and not subject to inquiry, and the results of their investigations are not to be suppressed. (*United States v. Causey* (5th Cir. 1987), 834 F.2d 1179.) Since evidence seized in violation of the fourth amendment is suppressed in order to deter unlawful *actions* by police officers, the exclusionary rule need not be applied when officers *act* in a lawful manner, even if they possess additional motives which, standing alone, would not be sufficient to justify their conduct. Application of the exclusionary rule in the manner urged by the defendant places an excessive and unwarranted burden on law enforcement personnel and would unreasonably restrict law enforcement

activities which were within the bounds of the Constitution. See *State v. Bruzzese* (1983), 94 N.J. 210, 463 A.2d 320, *cert. denied* (1984), 465 U.S. 1030, 79 L. Ed. 2d 695, 104 S. Ct. 1295.

■ In the instant case, the trial court correctly determined that the officers effected a lawful, valid arrest of Anderson for driving with a suspended license. The trial court erred, however, in conducting a further analysis of the officers' post-arrest conduct and determining it violated the defendant's fourth amendment rights. The challenged police conduct, the arrest of Anderson, was evaluated by the court under the objective analysis of *Scott* and was found to be constitutionally sound. Further analysis was unnecessary as the defendant alleged only that the arrest itself was illegal and did not maintain that the investigatory procedures employed subsequent to the arrest further violated his constitutional rights. Accordingly, upon determining that the officers effectuated a valid arrest based on probable cause, the court need not have inquired further and should not have suppressed the results of the subsequent investigation.

■ Assuming, for the sake of argument, that analysis of the officers' post-arrest conduct was necessary, we find that, viewed objectively, the conduct was reasonable under the facts and circumstances and could not invalidate the otherwise legal arrest or require exclusion of the evidence obtained during the investigation. The trial court, however, discussed several factors which led it to conclude that the officers were guilty of serious misconduct and acted in an arbitrary, unjustified manner. We will address each of these factors and explain the reasons for our disagreement with the trial court's decision.

First, the trial court found that the initial search of the vehicle at the scene of the arrest was improper and unnecessary. The court overlooked the fact that Anderson consented to the search immediately after he was arrested. Accordingly, the search cannot be construed as an unreasonable intrusion.

Second, the court noted that Anderson's car was immediately towed from a public lot to the Park Forest police station and that Anderson was not afforded the opportunity to secure the car at the parking lot or arrange for a friend to move the car. The court concluded there was no reason to tow the car anywhere. However, the officers had a legitimate reason to tow the car and that was to conduct a thorough search of the vehicle, and as noted above, the defendant consented to the search upon his arrest. At the police station, Anderson again orally consented to the search and also signed a form giving the police permission to search the vehicle. Thus, the trial court and the defendant needlessly discussed whether the police con-

ducted a valid or necessary inventory search, as it was a permissible search made with the defendant's repeated consent. The fact that this consensual search could have been conducted at the parking lot instead of at the police station after the car was towed is of no moment. Having obtained the defendant's consent to search, there was no requirement that the search be conducted in the public parking lot.

Third, the trial court commented on the fact that the defendant was taken to the Park Forest police department even though the arrest was made in Matteson. This factor provides no support for the trial court's allegations of official misconduct. The record establishes that the Matteson police were notified that the Park Forest officers were making an arrest in Matteson's jurisdiction and they allowed the Park Forest officers to take the defendant to Park Forest. Inasmuch as the Park Forest officers effected the arrest and desired to question the defendant about a homicide, it was reasonable for them to remove the defendant to their police department after obtaining consent from the Matteson police.

Fourth, the court below found as additional evidence of fourth amendment violations that the defendant was never ticketed or prosecuted for the offense of driving with a suspended license. The State argues that the lack of ticketing and prosecution does not affect the legality of the arrest (*People v. Jones* (1977), 56 Ill. App. 3d 414), and further calls our attention to the fact that the decision to not formally charge the defendant with the traffic offense was one made by the State's Attorney's office. We agree that the lack of formal ticketing and subsequent prosecution does not invalidate the lawful arrest. Furthermore, we find it ironic that the defendant now complains that he was not charged, tried, and punished for this additional crime. Finally, we note that during oral argument, the defendant's attorney conceded that the failure to ticket and prosecute the defendant for the traffic violation was a matter of no real consequence.

In summary, we believe that we must follow the pronouncements of the United States Supreme Court in *Scott* and later cases and evaluate alleged fourth amendment violations under a standard of objective reasonableness without regard to the officers' underlying motivations. Objectively viewed, the officers in the instant case had abundant probable cause to satisfy the constitutional requirement for an arrest for driving with a suspended license. In arresting the defendant for this crime, they acted with legal authority and did nothing beyond what they were legally empowered to do. Having effectuated a valid custodial arrest, there is no question that they had the authority to transport the defendant to the police station and question

him about another crime of which he might have knowledge. There is also no question that the defendant consented to a search of his car, repeatedly waived his *Miranda* rights, and virtually begged to lead the officers to the gun. Thus, the trial court need not have conducted a *Scott* analysis of the conduct of the officers after the arrest. However, even if the officers' subsequent investigatory procedures are also examined under the standard of objective reasonableness, we find that each was reasonably undertaken and there is no support for the trial court's determination that the officers violated the defendant's fourth amendment rights. Accordingly, we hold that the defendant's motions to quash his arrest and to suppress the evidence were improperly granted, and we reverse the order of the trial court and remand the cause for further proceedings.

Reversed and remanded.

SCOTT and WOMBACHER, JJ., concur.