THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. COR-NELL FENNER, Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIAM HORTON, a/k/a Melvin Horton, Defendant-Appellant.

Second District   Nos. 2—88—0454, 2—88—0698 cons.

Opinion filed December 20, 1989.—Rehearing denied January 12, 1990.

G. Joseph Weller and Thomas A. Lilien, both of State Appellate Defender's Office, of Elgin, for appellants.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and Cynthia N. Schneider, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE REINHARD delivered the opinion of the court:

Defendants, Cornell Fenner and William Horton, were each charged in the circuit court of Du Page County by separate informations with the offenses of burglary (Ill. Rev. Stat. 1987, ch. 38, par. 19—1(a)) and theft (Ill. Rev. Stat. 1987, ch. 38, par. 16—1(a)(1)) arising out of the same occurrence. Following a bench trial, Fenner was found guilty of two counts of burglary and was sentenced to a 12-year term of imprisonment on one count. Horton, following a stipulated bench trial, was found guilty of both burglary counts and was sentenced to two 14-year terms of imprisonment to run concurrently with each other and concurrently with separate convictions in Du Page County and Cook County. Upon motion of defendants, this court consolidated their appeals.

The two issues raised on appeal are: (1) whether the trial court erred at a pretrial suppression hearing in precluding defendants from inquiring of the police officers as to their subjective intent in stopping defendants' vehicle; and (2) whether Horton must be granted a new sentencing hearing if his convictions in a separate case on appeal are reversed.

The following relevant facts were adduced at the joint hearing on defendants' motion to quash arrest and to suppress evidence. On August 8, 1987, a Saturday, at approximately 6 a.m., defendants and a third man, Charles Nunnery, entered the Origa Corporation located at 928 North Oak Lawn in Elmhurst, Illinois. Nunnery inquired about employment with Robert Haenisch, an employee of Origa, who was working overtime. After Haenisch told the three to return on Monday to the personnel department, the trio departed the premises. Shortly thereafter, Haenisch observed a car with the same three men drive from behind the Origa building to a location behind a Xerox building adjacent to Origa in the industrial complex. Two of the men exited the vehicle and walked over to several semitrailers parked near the Borg-Warner building on the other side of the Xerox building. The two appeared to be looking around the semitrailers. The third man moved the vehicle to the side of the Xerox building and waited. Haenisch apparently was unable to observe any further activity on the

part of the two individuals near the semitrailers. Haenisch knew that both Xerox and Borg-Warner were closed on Saturdays.

At 6:21 a.m., Haenisch telephoned the Elmhurst police department and told the dispatcher that three black males had driven behind the Xerox building and that two had gotten out of the car and were looking around the semitrailers. Haenisch described the car as an older model Chevrolet or Oldsmobile, light colored, beige or tan, with rust spots.

Officer John Hybl of the Elmhurst police department received a radio dispatch at 6:21 a.m. that a suspicious, older, gold car was parked in the lot behind the Xerox building at 935 Oak Lawn in Elmhurst with two black male occupants. He was familiar with the area and had patrolled by there earlier that morning. He knew the dispatcher received the information from a person at 928 Oak Lawn. Approximately two to three minutes after receiving the dispatch, as he was responding to the location, Hybl observed an old gold-colored Chevrolet with two black males in the front seat stopped facing north at a stop sign at the intersection of Oak Lawn and Grand Avenue. Oak Lawn is a dead end street only a block long, and the stop sign is at the north end. The Xerox building is at the south end of the block. He saw no other vehicles on the street. As Hybl turned his squad car onto Oak Lawn from Grand Avenue, he slowed down in order to read the license plate number on the gold Chevrolet. He then proceeded down Oak Lawn and pulled into a parking lot. As he did so, the Chevrolet turned right and proceeded east on Grand Avenue. Hybl dispatched the direction of travel of the Chevrolet, the color of the vehicle, and the license plate number. He did not dispatch a request to stop the vehicle.

Officer Rick Sidell of the Elmhurst police department heard the original radio dispatch, the dispatch by Hybl, and a dispatch by Officer Nicholas, who reported the gold Chevrolet as going eastbound on Grand Avenue at a high rate of speed. Sidell observed the gold Chevrolet traveling in his opposite direction. Sidell made a U-turn and followed the Chevrolet at a distance of one car length, where he observed that the license plates were expired. He then activated his overhead lights and effected a traffic stop. According to Sidell, he stopped the vehicle because its license plates were expired. The vehicle was not speeding at that time. During the examination of Officer Sidell, the defendants, following an objection by the State, were prevented from asking Sidell his subjective intent for stopping the vehicle. The trial court ruled that the officer's subjective intent was immaterial.

Upon stopping the vehicle, it was discovered that the vehicle contained numerous boxes of booster cables and spark plug wires. Further investigation at the Borg-Warner building revealed that booster cables and spark plug wires were missing from the semitrailers and that the missing property was the same type as that found in defendants' vehicle. All three defendants were then arrested for burglary at the scene of the traffic stop.

Defendants contend on appeal that the trial court erred in prohibiting them from asking Officer Sidell any questions regarding his intent in stopping their vehicle. In this regard, defendants first argue that they should have been allowed to ask Sidell questions regarding his intent in order to establish whether Sidell's stopping of defendants' vehicle for a traffic violation was a pretext for investigative purposes unrelated to the traffic violation. They ask that we remand for a new suppression hearing.

We first note that defendants only challenge the constitutionality of Sidell's original stop of their vehicle and do not present any issue as to whether there was probable cause to subsequently arrest the defendants.

■ We begin our analysis by emphasizing that in Illinois, consistent with the principles set forth in *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, a police officer may stop a person for investigative purposes when the officer reasonably infers from the circumstances that the person is committing, is about to commit, or has committed an offense. (Ill. Rev. Stat. 1987, ch. 38, par. 107—14; *People v. Long* (1983), 99 Ill. 2d 219, 228, 457 N.E.2d 1252.) These same principles apply to the investigatory stop of a vehicle. See *People v. Crest* (1989), 188 Ill. App. 3d 768, 772, 544 N.E.2d 825.

■ The necessary inquiry in any *Terry* stop analysis is whether the police officer's conduct was reasonable under the circumstances known to the officer at the time he initiated the stop. (*Terry*, 392 U.S. at 27, 20 L. Ed. 2d at 909, 88 S. Ct. at 1883; *Long*, 99 Ill. 2d at 227-28, 457 N.E.2d at 1255.) In making that assessment, the facts are judged against an objective standard. (*Terry*, 392 U.S. at 21-22, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880.) For a valid investigatory stop, the information relied upon does not have to meet the tests required for an arrest or search warrant. (*Adams v. Williams* (1972), 407 U.S. 143, 147, 32 L. Ed. 2d 612, 617, 92 S. Ct. 1921, 1923.) An officer's inferences, to be considered reasonable, must be based on more substantial facts than would support a mere hunch. For the officer to justify a temporary detention, he or she must point to specific, articulable facts which, when taken together with natural inferences, make

the intrusion reasonable. (*People v. Smithers* (1980), 83 Ill. 2d 430, 435-36, 415 N.E.2d 327.) Facts and circumstances, which if viewed separately might constitute innocent behavior, may provide reasonable suspicion justifying an investigative stop when considered in their entirety. *United States v. Sokolow* (1989), 490 U.S. 1, 9-10, 104 L. Ed. 2d 1, 11-12, 109 S. Ct. 1581, 1586-87.

■ In the present case, we necessarily consider all of the facts and circumstances known to Officer Sidell prior to stopping defendants' vehicle, and any reasonable inferences drawn therefrom, in determining the reasonableness of the stop. Where, as here, officers are acting in concert in investigating a crime or possible crime, probable cause to arrest, or reasonable suspicion to stop as is the case here, can be established from all the information collectively received by the officers even if not known to the officer initiating the stop. *People v. Fox* (1987), 155 Ill. App. 3d 256, 263-64, 508 N.E.2d 475; see also *Village of Gurnee v. Gross* (1988), 174 Ill. App. 3d 66, 70, 528 N.E.2d 411.

Officer Sidell had heard the original dispatch of a suspicious, gold Chevrolet with two black male occupants parked in the lot behind the Xerox building in Elmhurst. He was further advised by radio that a gold-colored Chevrolet with two black male occupants in the front seat was traveling east on Grand Avenue at a high rate of speed. This direction was away from the location of the Xerox building. This information may have suggested flight. He also knew, based on Hybl's dispatch, that a gold-colored Chevrolet with two male black occupants had entered Grand Avenue from Oak Lawn a few minutes after the original dispatch. Additionally, Officer Hybl had observed this vehicle as it was leaving the one-block street where the original suspicious vehicle was reported. Further, the suspicious vehicle with two occupants was reported to be in the parking lot behind the Xerox building in an industrial complex at 6:21 a.m. on a Saturday morning, a time when Xerox might not normally be open for business and in an area not normally used by the public, facts which might cause the officers to infer a crime to be in progress. In addition, the citizen-witness, Robert Haenisch, testified that he told the dispatcher that the two black men had gotten out of the vehicle and were looking around semitrailers.

■ When viewed in their entirety, it would not be unreasonable for police officers collectively to conclude, based on these facts, circumstances, and natural inferences to be drawn therefrom, that an offense had been committed and that the occupants of the Chevrolet were involved. Thus, there existed a reasonable, articulable suspicion

justifying the stop of the Chevrolet for investigative purposes. The trial court's decision on this issue was not manifestly erroneous. See *People v. Galvin* (1989), 127 Ill. 2d 153, 162-63, 535 N.E.2d 837.

Defendants maintain, however, that Sidell's subjective intent was relevant to show that he stopped them pretextually, and, therefore, they should have been allowed to inquire as to his intent at the suppression hearing. Such an argument is misplaced where, as here, the officer had a constitutional basis for stopping defendants' vehicle. The fact that Sidell testified that he stopped the vehicle based on the traffic violation, a basis which might arguably generate the issue of pretext under other circumstances, does not by itself inject the issue of pretext into the inquiry of whether there was a reasonable basis for the stop under the fourth amendment. To impose the issue of pretext under the circumstances here would be to unnecessarily obfuscate the question of whether the officer had a constitutional basis for the stop simply because there also existed some separate basis for a stop, such as a traffic violation, which the officer chose to act upon. The question of whether the officer acted pretextually in stopping the vehicle for a traffic violation is simply not an issue where he was otherwise justified in stopping the vehicle pursuant to principles enunciated in *Terry v. Ohio* and codified in section 107—14 of the criminal code.

Our analysis in this respect is consistent with several recent cases which have held that the issue of pretext is not implicated where an officer otherwise has probable cause to arrest a person. (*People v. Hattery* (1989), 183 Ill. App. 3d 785, 813-19, 539 N.E.2d 368; *People v. Anderson* (1988), 169 Ill. App. 3d 289, 294-98, 523 N.E.2d 1034.) Furthermore, our supreme court, citing *Scott v. United States* (1978), 436 U.S. 128, 135-38, 56 L. Ed. 2d 168, 176-78, 98 S. Ct. 1717, 1722-23, has stated that the proper approach for evaluating compliance with the fourth amendment is to objectively assess the officer's actions in light of the facts and circumstances before him at the time without regard to his underlying intent or motivation. *People v. Hoskins* (1984), 101 Ill. 2d 209, 213-14, 461 N.E.2d 941; see also *Anderson*, 169 Ill. App. 3d at 297, 523 N.E.2d at 1040.

■ We are careful to note, however, that we are not deciding the issue of whether the pretext doctrine has vitality, generally, but rather, are more narrowly holding that where, as here, an officer has a reasonable suspicion justifying a temporary detention under the fourth amendment, the fact that he is also aware of a traffic violation which would provide a separate basis to stop does not raise the issue of pretext. Consequently, under the facts of this case, it was not error for the trial court to preclude inquiry into Officer Sidell's underlying

intent or motivation for stopping defendants' vehicle.

■ Defendants also argue that they should have been allowed to question Officer Sidell and other officers as to their motives so as to attack the credibility of their testimony about what information was available to them at the time of their actions. The State responds that such a basis was not presented to the trial court and is thus waived. We agree that this reason was not presented below. The only basis offered at the hearing for this line of questioning by defendants was for the purpose of learning the subjective intent of Sidell to determine if the improper registration reason for the stop given by Sidell was a pretext for the stop. Thus, this contention is waived.

We next address defendant Horton's contention that this court should vacate his sentences and remand for a new sentencing hearing in the event either of his convictions for armed robbery and aggravated battery in another Du Page County case are reversed in a separate appeal, No. 2—88—0672, currently pending in this court. He argues that these other convictions were before the trial court at the time of the sentencing hearing in this case and that they "must have had an impact on the sentencing court here."

■ The State responds that this issue is not ripe for review as the other appeal is still pending. Horton replies that this court should simultaneously decide these two appeals.

We agree with the State that the issue defendant Horton attempts to raise is not ripe for adjudication at the present time. (See *People v. Ziltz* (1983), 98 Ill. 2d 38, 42, 455 N.E.2d 70.) Also, we will not consolidate or adjust the scheduling of our cases on appeal where, as here, the two appeals arise out of distinct and separate occurrences and present different issues for our review.

The judgments of the circuit court of Du Page County are affirmed.

Affirmed.

UNVERZAGT, P.J., and INGLIS, J., concur.