THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
CATHY L. PERRY, Defendant-Appellee.

Second District No. 2—89—0459

Opinion filed October 16, 1990.

James E. Ryan, State's Attorney, of Wheaton (Barbara A. Preiner, Assistant State's Attorney, and William L. Browers, Colleen M. Griffin, and Cynthia N. Schneider, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

G. Joseph Weller and Francine Harrison, both of State Appellate Defender's Office, of Elgin, for appellee.

JUSTICE REINHARD delivered the opinion of the court:

The State appeals pursuant to Supreme Court Rule 604(a)(1) (107 Ill. 2d R. 604(a)(1)) from an order of the circuit court of Du Page County granting a motion to quash arrest and suppress evidence filed by defendant, Cathy L. Perry.

The State raises the following issues on appeal: (1) whether the circuit court's determination that the stop of defendant's vehicle was pretextual is manifestly erroneous; and (2) whether the search of defendant's purse was valid under *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, or, alternatively, was valid as a search incident to arrest.

Defendant was charged by information with the offense of the un-

lawful possession of less than 15 grams of a controlled substance containing cocaine (Ill. Rev. Stat. 1987, ch. 56½, par. 1402(b)). Defendant filed a motion to quash her arrest and suppress the evidence seized, contending that the traffic citation issued to her was a mere pretext for an illegal stop and seizure, and that the subsequent search of her purse resulted from the illegal stop and was without probable cause.

The only witness to testify at the suppression hearing was Jack Pearson, a police officer with the Itasca police department. He testified that he observed defendant's car pull into a parking lot on West Irving Park Road on July 12, 1988, at about 8:50 a.m. He observed that the car did not have a rear registration plate visible. The vehicle stopped in the parking lot, and the driver remained sitting in the vehicle. Several minutes later, the car backed out of the parking lot and proceeded about a block down Irving Park Road. Pearson, who had remained in the area on a fire department assistance call, then stopped the vehicle based on the fact that there was no rear registration plate. Pearson originally stated that he did not recall viewing a registration plate anywhere on the vehicle prior to the stop. After refreshing his recollection with the police report he completed regarding this offense, Pearson stated that he did obtain information regarding the registration plate prior to the stop. He did not remember whether he got the registration plate number from the front of the car or from a plate located somewhere inside the vehicle.

Pearson called in the registration plate number and was informed that the plates were registered to defendant. He was also informed over the radio that defendant had prior weapons offenses. He did not obtain any information as to the nature of those charges. Pearson recognized the name Cathy Perry from prior incidents and, after the stop, recognized defendant as an individual who had used numerous aliases. He asked defendant for her driver's license. She responded that she did not have one. He then issued her a citation for having no rear registration plate and informed her that she would have to go with him to the Itasca police department to post bond.

Pearson testified that defendant was excited and insisted on having her purse. Pearson retrieved the purse from defendant's vehicle. He asked her to sit in the rear of his vehicle and placed the purse on the front seat beside him. He did not allow defendant to have possession of the purse because of the communication that she had prior weapons offenses. When they walked between the two cars to get into the police vehicle, defendant tried to grab the purse. Pearson did not search defendant before she entered his vehicle.

At the police station, defendant continually insisted on having her

purse. Pearson told her that he had to check the purse first. He stated that she finally responded, "Check my purse. But I want my purse now." Pearson then searched the purse, which was a large, bag-type purse. He first pulled out a second purse. He then observed a white "sno-seal" on the inside of the larger bag which he seized. A "sno-seal" is a piece of paper folded in a manner to keep cocaine. He also searched the second purse. Pearson testified that he went through the purse so that, when he handed it back to defendant, he would know that there were no weapons in the purse and that he was safe. Pearson testified that, at the time he searched defendant's purse, she was under arrest for having no rear registration plate and no driver's license. He testified that, if she had possessed a driver's license, she would have been released at the scene.

Following this testimony, the trial judge granted defendant's motion to quash arrest and suppress evidence. The court noted that it was clear that Pearson learned that there was a registration plate prior to stopping the vehicle, so there must have been some registration on the front of the vehicle. He also stated that a "ticket would not have been issued under the circumstances, had the officer gone over to the vehicle in the first place and seen the proper registration on the front of the car." He concluded that it was a pretextual stop based on the fact that Pearson testified that he knew of defendant's past problems. He further noted that he questioned whether Pearson was actually concerned for his own safety as he did not search defendant before he put her into the backseat of the police car and did not initially look in the purse, but waited until he arrived at the police station.

The State first contends that defendant's motion to suppress should not have been granted because the facts of this case do not support the trial court's conclusion that the stop of defendant was pretextual. It argues that the uncontroverted testimony of Pearson established that he stopped defendant's vehicle for a valid purpose, because the rear registration plate was not displayed. The State also maintains that, in any event, courts should not indulge in inquiries as to the subjective intent of an arresting officer if, objectively, probable cause exists for an arrest.

Defendant admits on appeal that there was no evidence presented to contradict the testimony that her car did not have a rear registration plate. She argues, however, that Pearson's conduct revealed that he actually had other motives for stopping her vehicle that, alone, would not have permitted him to do so.

 With respect to a motion to suppress evidence, the defendant has the burden of proving that the search and seizure were unlawful. (*People v. Hoskins* (1984), 101 Ill. 2d 209, 212, 461 N.E.2d 941.) A trial

court's ruling on a motion to suppress evidence will not be disturbed unless it is manifestly erroneous. *People v. Redd* (1990), 135 Ill. 2d 252, 289, 553 N.E.2d 316.

Section 3—413(a) of the Illinois Vehicle Code provides, in pertinent part:

> "Registration plates issued for a motor vehicle *** shall be attached thereto, one in the front and one in the rear." (Ill. Rev. Stat. 1987, ch. 95½, par. 3—413(a).)

A violation of this provision is a Class B misdemeanor. (Ill. Rev. Stat. 1989, ch. 95½, par. 3—915.) This court has recently held that the visual observation of a missing rear registration license plate constitutes reasonable grounds to stop a vehicle. (*People v. Assenato* (1989), 186 Ill. App. 3d 331, 338, 542 N.E.2d 457.) Other appellate court decisions have similarly found that it is permissible to stop a car because of the lack of a rear registration plate. *People v. Bradi* (1982), 107 Ill. App. 3d 594, 599, 437 N.E.2d 1285; *People v. Redmond* (1979), 73 Ill. App. 3d 160, 166, 390 N.E.2d 1364.

Based on the uncontroverted facts in this case as applied to the established case law, the stop by Pearson of defendant's car was reasonable and, consequently, a valid, permissible stop. Defendant contends, however, that a pretextual arrest situation is presented here, relying on the facts that Pearson knew her from previous encounters; that he did not approach her in the parking lot when he first saw that the car had no rear plate but waited until she entered the public roadway; and that he did not search her person as well as her purse. Thus, defendant urges that the trial court properly considered the other motives which Officer Pearson had in stopping her vehicle notwithstanding that she admittedly did not have a rear license plate.

■■ ■ The clear trend in Illinois Appellate Court decisions in this area is to determine whether the stop is objectively reasonable, and, if so, it is not invalidated solely because the officer acted out of an improper or dual motivation. (*People v. Guerrieri* (1990), 194 Ill. App. 3d 497, 501-02, 551 N.E.2d 767; *People v. Hattery* (1989), 183 Ill. App. 3d 785, 813-19, 539 N.E.2d 368; *People v. Anderson* (1988), 169 Ill. App. 3d 289, 294-98, 523 N.E.2d 1034; see also *People v. Fenner* (1989), 191 Ill. App. 3d 801, 807, 548 N.E.2d 147.) We agree with this authority. Because the stop here was objectively reasonable, the finding of the trial court, that the stop was pretextual based upon the court's assessment of the officer's subjective motives, was manifestly erroneous.

We next address the issue of whether the subsequent search of defendant's purse at the police station was valid.

The State contends that the search was valid as a search for weap-

ons based on *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, or, in the alternative, as a search incident to arrest. Defendant argues that the facts here did not justify a protective *Terry* search; however, no responsive argument is presented to the State's search incident to an arrest contention beyond the statement that, because the arrest was unlawful, any search incident to that arrest was also unlawful. Inasmuch as we believe the search was valid as incident to defendant's arrest, we need only address that issue.

We have already determined that the stop based on the defendant's failure to have a rear registration plate was valid. After defendant's failure to produce a valid driver's license in violation of section 6—112 of the Illinois Vehicle Code (Ill. Rev. Stat. 1989, ch. 95½, par. 6—112), the custodial arrest at the scene was both legal and appropriate. (*People v. Ramsey* (1979), 77 Ill. App. 3d 294, 296, 395 N.E.2d 973; see also *People v. Wingren* (1988), 167 Ill. App. 3d 313, 323, 521 N.E.2d 130.) Therefore, in determining whether the search of defendant's purse was valid, the appropriate inquiry is whether the search was proper as a search incident to arrest.

One of the recognized exceptions to the general rule that warrantless searches are *per se* unreasonable is a search incident to a lawful arrest. (See *Chimel v. California* (1969), 395 U.S. 752, 762-63, 23 L. Ed. 2d 685, 694, 89 S. Ct. 2034, 2040.) It is the fact of the lawful arrest which establishes the authority to search. *United States v. Robinson* (1973), 414 U.S. 218, 235, 38 L. Ed. 2d 427, 441, 94 S. Ct. 467, 477.

Section 108—1 of the Illinois Code of Criminal Procedure of 1963, which provides the circumstances under which a search incident to a lawful arrest may be conducted, states:

"When a lawful arrest is effected a peace officer may reasonably search the person arrested and the area within such person's immediate presence for the purpose of:
(a) Protecting the officer from attack; or
(b) Preventing the person from escaping; or
(c) Discovering the fruits of the crime; or
(d) Discovering any instruments, articles, or things which may have been used in the commission of, or which may constitute evidence of, an offense." Ill. Rev. Stat. 1989, ch. 38, par. 108—1(1).

The statute gives broad authority for a search incident to an arrest. In *People v. Hoskins* (1984), 101 Ill. 2d 209, 461 N.E.2d 941, our supreme court found the search of a purse to be a valid search incident to arrest. In that case, the purse was searched at the scene after the defendant was arrested for prostitution. The court relied on *New York v. Belton* (1981), 453 U.S. 454, 459-61, 69 L. Ed. 2d 768, 774-76, 101 S. Ct.

2860, 2864, which held that, as a contemporaneous incident of a lawful arrest, all containers within the area into which an arrestee might reach can be searched regardless of the likelihood that a weapon or evidence of criminal conduct would be found. The *Hoskins* court found the search valid even though the purse was in the exclusive control of the police at the time it was searched. *Hoskins*, 101 Ill. 2d at 217, 461 N.E.2d at 945.

It is clear, therefore, that Pearson could have searched defendant's purse immediately after she was placed under arrest. The question presented here, however, is whether Pearson could legally search the purse shortly after the arrest at the police station. There is no question presented, and the State does not argue, that the search here can be considered a valid station-house inventory search as the record does not show that defendant was to be incarcerated. See *People v. Nogel* (1985), 137 Ill. App. 3d 392, 398, 484 N.E.2d 516.

■ The State cites cases, based on *United States v. Edwards* (1974), 415 U.S. 800, 39 L. Ed. 2d 771, 94 S. Ct. 1234, to support the subsequent search of the purse at the police station. The court in *Edwards*, in upholding a seizure of the defendant's clothing while he was incarcerated 10 hours after the arrest, stated in pertinent part that "[i]t is also plain that searches and seizures that could be made on the spot at the time of arrest may legally be conducted later when the accused arrives at the place of detention." (*Edwards*, 415 U.S. at 803, 39 L. Ed. 2d at 775, 94 S. Ct. at 1237.) Several Illinois cases which have followed *Edwards* do not involve the precise factual question raised here but are analogous. See, *e.g.*, *People v. Seymour* (1981), 84 Ill. 2d 24, 33, 416 N.E.2d 1070 (strip search of person at station charged with misdemeanor weapons offense); *People v. Campbell* (1977), 67 Ill. 2d 308, 318-19, 367 N.E.2d 949 (continuation of search of luggage at police station seized at airport based on probable cause); *People v. Wolsk* (1983), 118 Ill. App. 3d 112, 119, 454 N.E.2d 695 (search of person at police station arrested for driving while under the influence of intoxicating liquors); see also *People v. Dillon* (1984), 102 Ill. 2d 522, 468 N.E.2d 964 (seizure of wallet and finding cocaine therein at police station "may well be \*\*\* sustained as a search incidental to defendant's arrest").

Professor LaFave, in his well-respected treatise on the law pertaining to search and seizure, states that a station-house search of an arrestee may properly extend to a search of items taken away from an arrestee earlier at the scene of the arrest:

> "Indeed, it may be said more generally that the courts assume that this search may be just as extensive as could have been made under *Robinson* at the scene of the custodial arrest, and this is so even where the arrestee's access to the object searched

was terminated between the time of arrest and the time of the search. That is, the scope of the search at the station is not limited to items *then* in the 'immediate control' of the defendant; it is sufficient that the items were on his person at the time of arrest. The notion seems to be that *Robinson* recognized that anything on the person was 'fair game' for a search, and that the opportunity of the police to search should not be more limited merely because there may have been reasons making a full search there impractical or because the police opted for the less humiliating alternative of a search in the privacy of the stationhouse." (Emphasis in original.) 2 W. LaFave, Search & Seizure §5.3(a), at 480-81 (2d ed. 1987).

Courts in other jurisdictions faced with this issue have held that the search at the station house of an item previously seized from the defendant at the scene of an arrest incident to the arrest is lawful. *United States v. Basurto* (9th Cir. 1974), 497 F.2d 781, 792 (search at customs office of wallet seized at scene of arrest); *People v. Boff* (Colo. 1988), 766 P.2d 646, 648-51 (search at sheriff's office of backpack seized at scene of arrest); *State v. Woods* (Mo. App. 1982), 637 S.W.2d 113, 116 (search at police station of purse seized while transporting defendant following her arrest); *State v. Horton* (1979), 44 N.C. 343, 344, 260 S.E.2d 780, 781 (search at police headquarters of pocketbook taken at scene of arrest).

■■ We believe the principle of law enunciated by the above authorities to be applicable to this case. Here, the search of defendant's purse at the police station occurred shortly after her valid arrest when her purse was taken from her by Officer Pearson. Under these circumstances, the subsequent search at the police station was proper as an incident to the valid arrest.

For the foregoing reasons, the trial court's order granting defendant's motion to quash her arrest and suppress evidence was manifestly erroneous and is reversed.

The judgment of the circuit court of Du Page County is reversed, and this cause is remanded.

Reversed and remanded.

GEIGER and McLAREN, JJ., concur.