THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
AUDEL N. ALVAREZ, Defendant-Appellant.

Third District   No. 3—92—0458

Opinion filed April 28, 1993.

Robert S. Burke, of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Joseph Navarro, State's Attorney, of Ottawa (John X. Breslin and Lawrence Michael Kaschak, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LYTTON delivered the opinion of the court:

Defendant Audel N. Alvarez was indicted for unlawful possession with intent to deliver more than 500 grams of cannabis. (Ill. Rev. Stat. 1991, ch. 56½, par. 705(e).) Prior to trial the defendant filed a motion to suppress evidence and quash arrest and, also, a motion to compel additional discovery. The motions were denied. Following a bench trial, the defendant was found guilty. The defendant now appeals, claiming that the trial judge erred in denying his discovery motion. We affirm.

The defendant's motion to suppress evidence was filed on March 25, 1992. The motion alleged that the defendant's car was stopped by the police on January 11, 1992, while the defendant was driving on

Interstate 80 in La Salle County, Illinois; that the police conducted a search of the vehicle which resulted in the seizure of certain items, including 29 packages of cannabis; and that the police conducted the search without a warrant, probable cause or the consent of the defendant. On April 2, 1992, on its own motion, the circuit court set April 8 as the hearing date for the motion to suppress.

On April 8, 1992, the defense filed a motion to compel additional discovery. The motion alleged that the defense sought certain information and documents; that the setting of the motion to suppress for April 8 left the defense with insufficient time to subpoena the materials from the police; that the defense had conveyed a written request to the State's Attorney's office for the materials; and that the request had been refused. The items which the defense motion sought included, *inter alia*, police radio logs for the date of the defendant's arrest and the preceding year; documents, publications, video tapes, audio tapes and other materials relied upon by officers in the field, including training documents and other information such as statistics, compiled data, parameters, indicators and similar information relating to the stopping and searching of drug suspects; and records pertaining to the stopping of vehicles upon Interstate 80 by the police. Defendant's motion stated that the basis for the request was that "a substantial issue exists herein relating to the pretextual stop of the Defendant, and the information and documents are not only relevant but critical to a comprehensive presentation of the facts relating to said issue."

That same day, April 8, 1992, the circuit court denied defendant's motion to compel additional discovery. The court then held an evidentiary hearing on defendant's motion to suppress evidence and quash arrest.

At the hearing on the motion to suppress, the defendant, Audel M. Alvarez, testified that he was driving an automobile in an eastbound direction on Interstate 80 in La Salle County, Illinois. Alvarez was stopped by police, and his car was searched. Alvarez denied that he had violated any traffic laws prior to the stop, and he denied that he had consented to the search. The defendant also testified that the police did not possess a search warrant.

On cross-examination, the defendant testified that his car was a 1983 Chevrolet Camaro. Alvarez testified that he did not understand the officer very well. However, when the officer requested his driver's license, Alvarez handed it to the officer. Alvarez stated that the only thing he understood the officer say at the time of the stop was "Mexican" and "license plates California." After obtaining the driver's li-

cense, the officer went back to his car and spoke on the radio. The officer then returned to the defendant's car, stated that the license was suspended, and told the defendant not to move. Other patrol cars arrived, the defendant was placed in the back of one car, and a police dog began walking around Alvarez' car. After the dog had walked around, the police then went inside the car and began to search.

The defendant testified that the officer asked whether there were any drugs or weapons in the car. Alvarez stated that he didn't know anything. He spoke to the officer in Spanish and said that drugs are bad. He denied telling the officer that he could search the car.

The defendant stated that he did not have any air fresheners hanging from his rearview mirror, but he did have a cross hanging on a chain and a saint's medal at the base of the window.

The defense next called Thomas Karalis as a witness. Karalis stated that he is an attorney with the State Appellate Defender's office in Ottawa. When Karalis began to testify as to an incident on March 21, 1992, the trial judge ruled his testimony irrelevant. The defense then made an offer of proof. If allowed, Karalis would have testified that on March 21, 1992, he was stopped by a police officer while driving on Interstate 80. According to Karalis, he was driving a vehicle with California plates, but he had violated no traffic laws. The officer detained Karalis' car for about 10 or 12 minutes, issued no citations, but requested permission to search Karalis' vehicle. When Karalis refused, he was allowed to leave. According to Karalis, the officer who stopped his vehicle was the same officer who stopped Alvarez.

After the defense rested, the State called Officer Dan Gillette to testify. Gillette testified that he is a sergeant with the Illinois State Police and, on January 11, 1992, he was training Captain Scutt of the La Salle County sheriff's department in drug interdiction. While sitting in their vehicle in the median of Interstate 80, Gillette saw a 1983 Chevrolet Camaro with "a lot of items" hanging from the rearview mirror. It appeared to the officer that these items obstructed the driver's view.

Sergeant Gillette began to follow the vehicle. The driver kept looking in his rearview mirror, and the car began drifting and weaving between lanes. During the mile and a half that Gillette followed the Camaro, the car drifted into the other lane four times. After the car made an abrupt lane change between two semi trucks, the officer activated his lights and stopped the car.

The driver of the vehicle was the defendant, Audel Alvarez. The officer requested the driver's license, and Alvarez gave it to him. Gil-

lette explained why he stopped the car and then went back to his car and ran a radio check on the driver's license. The driver's license was suspended. Gillette returned to the car and saw that the driver was shaking and beads of sweat were forming on his forehead. Gillette told Alvarez that he would be issuing citations and the vehicle would be towed. The officer asked whether there were any weapons or drugs in the car. The driver stated, "No, drugs are bad, go ahead."

Officer Gillette called for a canine unit, and a dog began scratching at the rear bumper. The dog's handler indicated that this reflected the presence of narcotics. Gillette then informed Alvarez that the dog had indicated the presence of drugs, at which point Alvarez would not speak in English, only in Spanish.

The police then conducted an inventory search of the car prior to towing. The search and subsequent removal of the rear bumper disclosed 29 packages of a substance which field tested positive for cannabis.

On cross-examination, Officer Gillette testified that the first thing he had noticed about the defendant's car was the California license plate. While he had previously stopped cars for obstruction of windshield, Gillette seldom issued a citation. And, once again, Gillette testified that Captain Scutt was present in the car for the purpose of receiving training on drug interdiction. Gillette also testified that it was not standard procedure in an inventory search to call for a canine unit.

On redirect examination, Gillette testified that the reasons he had called for the canine unit were the heavy scent of air freshener, which is often used to mask some other smell, the presence of a roll of duct tape, which is often used by drug couriers to wrap drugs, and the nervous behavior displayed by the driver.

The circuit court found that the police had acted in a reasonable manner and denied the defendant's motion to suppress.

On April 22, 1992, the defendant filed a motion requesting that the circuit court reconsider its rulings on defendant's motion to compel additional discovery and motion to suppress. Regarding the discovery motion, the defendant asserted that the information sought was relevant, since under "current prevailing law *** an arrest may not be used as a pretext to search for evidence, and the tainted evidence is excluded in order to deter deliberate police misconduct." The circuit court denied the motion to reconsider. The defendant was then tried and convicted.

On appeal, the defendant asserts that the circuit court erred in denying his motion to compel additional discovery. The defendant

claims that the police officer's stated reasons for stopping the defendant—weaving and the presence of obstructions in the windshield—were merely a pretext for the stop. The defendant contends that the police radio logs might have demonstrated the officer's actual reasons for stopping the defendant's car.

We find that the trial judge did not err in denying the defendant's discovery motion. A trial judge has broad discretion in controlling discovery. (*People v. Fairbanks* (1986), 141 Ill. App. 3d 909, 914, 491 N.E.2d 74.) A trial court's discovery ruling will not be overturned unless there is a manifest abuse of discretion. *Fairbanks*, 141 Ill. App. 3d at 915.

A defendant's discovery request is governed by Supreme Court Rule 412(h), which states:

"Upon a showing of materiality to the preparation of the defense, and if the request is reasonable, the court, in its discretion, may require disclosure to defense counsel of relevant material and information not covered by this rule." 134 Ill. 2d R. 412(h).

In light of present case law regarding claims of pretextual stops and arrests, we find that the documents and items sought by the defense in this case were immaterial.

Under the pretextual arrest doctrine, evidence discovered and seized by means of a search subsequent to a pretextual arrest is inadmissible. The tainted evidence is excluded in order to deter deliberate police misconduct and prevent law enforcement officers from being rewarded for their subterfuge. *People v. Anderson* (1988), 169 Ill. App. 3d 289, 294, 523 N.E.2d 1034.

The seminal case for the pretextual arrest doctrine was *United States v. Lefkowitz* (1932), 285 U.S. 452, 76 L. Ed. 877, 52 S. Ct. 420. Therein, police officers holding a valid arrest warrant searched the defendants' desks and wastebaskets and seized papers for use as evidence of the crimes for which the defendants were charged. The United States Supreme Court stated that "[a]n arrest may not be used as a pretext to search for evidence." *Lefkowitz*, 285 U.S. at 467, 76 L. Ed. at 884, 52 S. Ct. at 424.

However, problems exist with the pretext approach. First, the language of the fourth amendment proscribes only unreasonable searches and seizures. (*Scott v. United States* (1978), 436 U.S. 128, 137, 56 L. Ed. 2d 168, 177, 98 S. Ct. 1717, 1723.) The primary purpose of the exclusionary rule is the deterrence of police "conduct" that violates fourth amendment rights. (*Stone v. Powell* (1976), 428 U.S. 465, 486, 49 L. Ed. 2d 1067, 1083, 96 S. Ct. 3037, 3048.) Thus, designed to de-

ter unlawful "actions" by police officers, the exclusionary rule need not be applied when they act properly even while possessing improper motives. (*Anderson*, 169 Ill. App. 3d at 297.) Second, courts applying the pretextual arrest doctrine have been forced to inquire into the underlying intent or motivation of the police officers, to determine whether some improper subjective purpose served as the actual basis for the arrest. Unreliable and time-consuming expeditions into the motivations of officers have led to inconsistent results which sometimes penalize police accused of bad thoughts despite exhibiting constitutionally appropriate behavior. (*Anderson*, 169 Ill. App. 3d at 295.) One commentator has questioned whether it is within the ability of judges to "determine with any fair rate of success the uncommunicated intentions or expectations of the police officer." *Anderson*, 169 Ill. App. 3d at 295, citing 2 W. LaFave, Search & Seizure §5.2(e), at 459 (2d ed. 1987).

In *Anderson* (169 Ill. App. 3d 289, 523 N.E.2d 1034), this court reviewed the history, scope and problematic nature of the pretextual arrest doctrine. This court considered more recent decisions, including those of the United States Supreme Court. See *Maryland v. Macon* (1985), 472 U.S. 463, 86 L. Ed. 2d 370, 105 S. Ct. 2778; *United States v. Villamonte-Marquez* (1983), 462 U.S. 579, 77 L. Ed. 2d 22, 103 S. Ct. 2573; *Scott v. United States* (1978), 436 U.S. 128, 56 L. Ed. 2d 168, 98 S. Ct. 1717.

In *Anderson,* this court concluded:

"Although the Supreme Court did not expressly renounce the pretextual arrest doctrine in the foregoing cases, it stated repeatedly that in analyzing alleged fourth amendment violations, an objective assessment of the officer's actions, not his state of mind, is what matters. The pretext approach clearly is not the prevailing approach of the United States Supreme Court in determining whether a defendant's fourth amendment rights have been violated. Rather, *** the Supreme Court has repeatedly ruled that when police officers do no more than they are objectively authorized and legally permitted to do, their motives in doing so are irrelevant and not subject to inquiry, and the results of their investigations are not to be suppressed." *Anderson*, 169 Ill. App. 3d at 297.

Since *Anderson*, the clear trend in Illinois Appellate Court decisions is to determine whether the stop is objectively reasonable. If it is, then the search is not invalidated solely because the officer acted out of an improper or dual motivation. *People v. Perry* (1990), 204 Ill. App. 3d 782, 786, 562 N.E.2d 618, citing *People v. Guerrieri* (1990),

194 Ill. App. 3d 497, 501-02, 551 N.E.2d 767; *People v. Fenner* (1989), 191 Ill. App. 3d 801, 807, 548 N.E.2d 147; *People v. Hattery* (1989), 183 Ill. App. 3d 785, 813-19, 539 N.E.2d 368.

In *People v. Mendoza* (1992), 234 Ill. App. 3d 826, 599 N.E.2d 1375, the Illinois Appellate Court faced a factual situation similar to that presented here. A police officer stopped an automobile that had Texas license plates and occupants who were Hispanic. The officer testified that she initially stopped the car because the driver's view was obstructed by fuzzy dice and several other items hanging from the rearview mirror. After stopping the vehicle and issuing a warning ticket for driving with an obstructed view, the officer asked if she could search the vehicle. The driver consented to a search of the vehicle and, following an extensive search which included removal of the gas tank, 15 pounds of marijuana were discovered. After the circuit court granted Mendoza's motion to suppress, the State appealed. *Mendoza*, 234 Ill. App. 3d at 828-33.

The appellate court reversed the circuit court's order of suppression. The appellate court acknowledged that where the purpose of a traffic stop is a pretext for a search or detention rather than for a traffic violation, such a search or detention is improper. (*Mendoza*, 234 Ill. App. 3d at 837.) Nonetheless, the appellate court stated:

> "In determining whether a traffic stop is pretextual, it is now well settled that it is the objective reasonableness of the stop which must be examined, rather than the subjective motivation of the officer. If the stop is objectively reasonable, it is not invalidated solely because the officer acted out of an improper or dual motivation." (*Mendoza*, 234 Ill. App. 3d at 837, citing *People v. Perry* (1990), 204 Ill. App. 3d 782, 786, 562 N.E.2d 618.)

In light of the presence of fuzzy dice and other items hanging from the rearview mirror, which materially obstructed the driver's view in the opinion of the officer, the stop and subsequent search were proper.

Here, as in *Mendoza*, the initial stop in this case was justified upon the presence of objects hanging from the rearview mirror which materially obstructed the driver's view. In this case, the prosecution also presented testimony that the defendant's car repeatedly weaved and drifted between lanes. Apparently the trial judge chose to believe this testimony. "[O]n a motion to suppress, it is the trial court's duty to resolve conflicting evidence and determine the credibility of the witnesses." *People v. Wheeler* (1992), 226 Ill. App. 3d 1092, 1096, 590 N.E.2d 552.

Since the police had objectively reasonable bases for stopping the defendant's car, the trial judge properly denied the defendant's discovery requests that were designed to question the officer's subjective motivations in making the stop.

Finally, we grant the State's request that the sum of $50 be assessed against the defendant as the statutory costs of this appeal. However, inasmuch as oral argument was waived, no $25-*per diem* costs will be assessed. Ill. Rev. Stat. 1991, ch. 34, par. 4—2002(a); *People v. Johnson* (1990), 199 Ill. App. 3d 577, 585, 557 N.E.2d 446.

For the foregoing reasons, the judgment of the circuit court of La Salle County is affirmed.

Affirmed.

SLATER and STOUDER, JJ., concur.