THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MALCOLM A. FARRELL, Defendant-Appellant.

Fourth District   No. 4—88—0453

Opinion filed March 31, 1989.

Daniel D. Yuhas and Judith L. Libby, both of State Appellate Defender's Office, of Springfield, for appellant.

Ronald F. Robinson, State's Attorney, of Winchester (Kenneth R. Boyle, Robert J. Biderman, and J.A.C. Knuppel, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LUND delivered the opinion of the court:

Following verdicts of guilty by a jury, the circuit court of Scott County entered judgments against defendant Malcolm A. Farrell for the offenses of theft over $300, armed robbery, residential burglary, and armed violence, in violation of sections 16—1, 18—2, 19—3, and 33A—2, respectively, of the Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, pars. 16—1, 18—2, 19—3, 33A—2). On June 6, the court sentenced defendant to five years' imprisonment for the theft conviction, 25 years' imprisonment for the armed robbery conviction, and 25 years' imprisonment for the armed violence conviction, with all sentences to run concurrently. The court imposed no sentence on the residential burglary conviction. Defendant now appeals.

The evidence established that on January 28, 1988, Paul and Mary Hoots awoke at 4 a.m. to find a black man with a gun in their home. While he tied them up, they heard him speaking to a second man. The black man was observed to be wearing white tennis shoes. An investigation, after the assailants left, established that items they took included a VCR, a small wooden chest containing silverware, four watches, a wedding ring, a pillowcase, and cash. It was discovered entry was gained by breaking a garage window, where some footprints were found. Also found in the house was a flashlight which did not belong to the Hoots.

On February 18, law enforcement officials went to defendant's

girlfriend's house to arrest him. Defendant attempted to get away by climbing on the window ledge of the apartment. At the time, he was wearing white tennis shoes, which the police confiscated. One expert testified these shoes could have made the shoe prints found by the broken window, and another testified defendant's fingerprint was found on the lens of the flashlight.

On February 22, defendant gave a statement to Sergeant John Yelliott stating he was with Michael Murphy and another unknown subject at the time of the crime, but he never entered the house. The others entered and brought out a VCR and a pillowcase containing a wooden case of silverware. Murphy told defendant he tied up a couple that was in the house. Defendant sold some of the property for Murphy.

Defendant gave a similar statement to Officer Jerry Lieb on February 25. Finally, a friend of defendant saw defendant and Murphy together on January 28 around 5 a.m. At that time, Murphy had a pillowcase and a small wooden box. The jury found defendant guilty on all charges.

Defendant contends the court erred by denying his motion to suppress and allowing admission of the statements he made to Yelliott and Lieb. He believes the State violated his sixth amendment right to counsel, asserting that these statements were taken after he had expressed a desire for an attorney.

On February 22, defendant was arraigned. At that time, the court explained that defendant was entitled to an attorney. The following exchange took place:

> "In the traditional sense, the right to a lawyer means a right to a lawyer whom you'd select, one you'd pick out, a lawyer in whose ability and integrity you have confidence. Oftentimes, we find that men in your position don't have money enough, or financial resources enough, to hire a lawyer of their own choice, and if that's true, and if they make request for it, a public defender is appointed, but traditionally, a man such as you has a right to say, 'I want to hire John Doe,' or whatever his name is. 'I know him, or I've heard of him. I believe he's a good lawyer. I'm persuaded that he's a good lawyer, and I'm sure he'll work for me,' and if you intend, of course, to hire a lawyer of your own selection, you may do so. On the other hand, as I said, if you haven't got the money, we'll see that you have a public defender, and he'll be an experienced and competent defense attorney.
>
> Do you understand me?

THE DEFENDANT: Yeah.

THE COURT: You going to hire a lawyer, Mr. Farrell?

THE DEFENDANT: Yes, sir.

THE COURT: Sir?

THE DEFENDANT: Yes, sir.

THE COURT: All right. Are you in a position at this time to tell me his name?

THE DEFENDANT: Not at the moment, no."

As it turns out, defendant never did retain counsel, and the court appointed him one on March 4.

Later, on February 22, Yelliott sought to interview defendant. Defendant was advised orally and in writing of his *Miranda* rights and, stating he understood them, signed a written waiver. He then gave the questioned statement.

On February 25, Lieb sought to interview defendant about a different crime. One item taken from the other burglary was found at the scene of the Hoots crime. Defendant was again advised of his *Miranda* rights and orally waived them. He then gave a statement which included discussion of the Hoots offense.

The resolution of this case involves the analysis of two United States Supreme Court cases. The first, which defendant cites, is *Michigan v. Jackson* (1986), 475 U.S. 625, 89 L. Ed. 2d 631, 106 S. Ct. 1404. There, the defendants appeared at their arraignment and requested court-appointed counsel. Prior to the defendants meeting with their counsel, the police interviewed them. In each case, they were properly advised of their *Miranda* rights and waived them. The Court determined these waivers were improper, and the statements should have been suppressed.

The Court held that in asking for appointment of counsel, defendants were not asking for counsel just for representation at trial, but were requesting counsel's services for every critical stage of the prosecution. (*Jackson,* 475 U.S. at 633, 89 L. Ed. 2d at 640, 106 S. Ct. at 1409.) The Court noted that, pursuant to *Edwards v. Arizona* (1981), 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880, once a defendant has requested counsel, advice of rights and acquiescence in police-initiated questioning cannot establish a valid waiver. (*Jackson,* 475 U.S. at 635, 89 L. Ed. 2d at 641, 106 S. Ct. at 1410.) Accordingly, the Court concluded that once a defendant has invoked his sixth amendment right by requesting counsel at his arraignment, the State could not initiate any conversation with defendant, and any evidence gained through such a conversation should be suppressed.

The second case, which the State relies on, is the recent decision

in *Patterson v. Illinois* (1988), 487 U.S. 285, 101 L. Ed. 2d 261, 108 S. Ct. 2389. There, the defendant was indicted for murder. Subsequent to the indictment and prior to arraignment, defendant was interviewed by the police. After being advised of his *Miranda* rights and waiving them, he gave an inculpatory statement.

The Court initially noted that the *Jackson* decision turned on the fact that the accused had asked for the help of a lawyer in dealing with the police. (*Patterson*, 487 U.S. at \_\_\_\_, 101 L. Ed. 2d at 271, 108 S. Ct. at 2394.) It observed that in this case, there was no such request. Thus, while the defendant's sixth amendment rights came into existence at the time of the indictment, without a request by defendant to speak with counsel, the police could initiate a conversation with defendant. The Court went on to hold that in such a situation, a post-indictment interview, a waiver of the *Miranda* rights by defendant would not only waive his fifth amendment rights but also his sixth amendment rights. (*Patterson*, 487 U.S. at \_\_\_\_, 101 L. Ed. 2d at 272, 108 S. Ct. at 2395.) Accordingly, the Court found the statement admissible.

■ The current status of the law, thus, appears to be that if at arraignment a defendant requests appointment of counsel, he has invoked his sixth amendment right, and the State cannot initiate a conversation with him. However, after an indictment, while his sixth amendment right has come into existence, unless he requests counsel, the State can initiate an interview, and the admonishment and waiver of the *Miranda* rights will waive the defendant's sixth amendment right for purposes of the interview. The critical factor appears to be whether defendant has requested the help of a lawyer in dealing with the police.

■ In the present case, defendant was under arrest, and it is evident his sixth amendment rights had come into existence. (See *People v. Thompkins* (1988), 121 Ill. 2d 401, 433, 521 N.E.2d 38, 51.) The question for us, then, is whether defendant's assertion that he would hire his own counsel is such that it invokes the holding in *Jackson*, in which case the police could not interview him. If it is, then defendant's waiver of his *Miranda* rights has no effect, and the statements should be suppressed. If it is not, then, pursuant to *Patterson*, defendant's valid waiver, after being advised of the *Miranda* warnings, also effectively waived his sixth amendment rights, and the statements are properly admissible.

We conclude defendant's statement that he would retain counsel is not such a clear assertion of his right to counsel as to bring it under *Jackson*.

██ In Illinois, it is settled that not every reference to an attorney should constitute an invocation of the right to counsel. (*People v. Krueger* (1980), 82 Ill. 2d 305, 311, 412 N.E.2d 537, 540; *People v. Smith* (1984), 102 Ill. 2d 365, 373, 466 N.E.2d 236, 240, *rev'd on other grounds* (1984), 469 U.S. 91, 83 L. Ed. 2d 488, 105 S. Ct. 490; *People v. Wieland* (1984), 123 Ill. App. 3d 576, 582, 462 N.E.2d 1256, 1260.) In *Krueger*, the court held the defendant's statement, "Maybe I need an attorney," did not constitute an effective request for counsel. The court explained:

> "We do not believe, however, that the Supreme Court intended by this language [in *Miranda v. Arizona*] that every reference to an attorney, no matter how vague, indecisive or ambiguous, should constitute an invocation of the right to counsel. *** 
>
> *** We hold that the officers did not violate defendant's *Miranda* rights, for, in this instance, a more positive indication or manifestation of a desire for an attorney was required than was made here." (*Krueger*, 82 Ill. 2d at 311-12, 412 N.E.2d at 540.)

In *Smith*, the court held that a defendant must *clearly assert* his right to counsel to invoke the *Miranda* protections. (*Smith*, 102 Ill. 2d at 373, 466 N.E.2d at 240.) Thus, if a defendant's statement concerning his desire for counsel is ambiguous, the interrogation is allowed to proceed.

While these cases dealt with requests for counsel under the fifth amendment, we see no reason why this analysis should not equally apply to requests for counsel under the sixth amendment. A review of United States Supreme Court cases makes clear that analysis under the fifth and sixth amendments is often interchangeable. See *Edwards*, 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880; *Jackson*, 475 U.S. 625, 89 L. Ed. 2d 631, 106 S. Ct. 1404; *Patterson*, 487 U.S. ___, 101 L. Ed. 2d 261, 108 S. Ct. 2389.

Defendant's statement that he intended to retain some unnamed attorney is, to our minds, an ambiguous assertion of his right to counsel. The cornerstone of the *Jackson* decision is that a defendant is desiring counsel to act as a medium, as evidenced by his asking for the help of a lawyer in dealing with the police. (*Patterson*, 487 U.S. at ___, 101 L. Ed. 2d at 271, 108 S. Ct. at 2394.) This desire is clearly evident when a defendant requests appointed counsel, as in *Jackson*, or indicates to the court that he has retained, or is in the process of retaining, a named counsel. The vague assertion that he intends to retain some attorney falls short of evidencing this desire. In the latter situation, it is not inappropriate for the State to initiate an interroga-

tion. This decision finds further support in a footnote to *Patterson*, where the Court stated:

> "We note as a matter of some significance that petitioner had not retained, or accepted by appointment, a lawyer to represent him at the time he was questioned by authorities. Once an accused has a lawyer, a distinct set of constitutional safeguards aimed at preserving the sanctity of the attorney-client relationship takes effect. * * *
>
> Indeed, the analysis changes markedly once an accused even requests the assistance of counsel." *Patterson*, 487 U.S. at ___ n.3, 101 L. Ed. 2d at 271 n.3, 108 S. Ct. at 2393-94 n.3.

■ We wish to emphasize that by our holding, we are not suggesting that defendant, by his ambiguous statement, has somehow waived any of his constitutional rights. Our decision is limited to the question of whether, under the facts in this case, the police can initiate further questioning. Defendant is still entitled to be given his *Miranda* warnings before any statement is elicited. Thus, if he does desire the presence of counsel, he can clarify his previous ambiguous statement at the time he is advised of his right to counsel by the police, and all questioning will cease.

In the present case, defendant, after being advised of the *Miranda* rights, which include a right to counsel, validly waived them, which further indicates his statement at the arraignment was not an attempted assertion of his right to counsel. In fact, defendant never did retain counsel, and counsel was subsequently appointed for him on the day of his preliminary hearing.

Prior to both interviews, defendant was meticulously given the *Miranda* warnings. In each case, he knowingly and voluntarily waived these rights. These waivers also acted as informed waivers of his sixth amendment right to counsel. (*Patterson*, 487 U.S. at ___, 101 L. Ed. 2d at 272, 108 S. Ct. at 2395.) Accordingly, we hold the court's decision denying defendant's motion to suppress was correct.

■ Lastly, defendant argues correctly, and the State concedes, that since residential burglary is the underlying felony for the armed violence conviction, and both arose out of the same physical act, the conviction for residential burglary must be vacated. (See *People v. Costales* (1988), 166 Ill. App. 3d 234, 240, 520 N.E.2d 421, 425.) It is so ordered.

Affirmed in part and vacated in part.

McCULLOUGH, P.J., and GREEN, J., concur.