UNITED STATES of America ex rel.
Malcolm A. FARRELL, Petitioner,

v.

Ronald J. HAWS, Warden, Centralia
Correctional Center, Respondent.

No. 89–3231.

United States District Court,
C.D. Illinois,
Springfield Division.

June 13, 1990.

Judith L. Libby, Office of State Appellate Defender, Springfield, Ill., for petitioner.

Douglas K. Smith, Asst. Atty. Gen., Springfield, Ill., for respondent.

## OPINION

RICHARD MILLS, District Judge:

Habeas corpus under 28 U.S.C. § 2254.

Petitioner complains that law enforcement officials improperly questioned him after he had asserted his right to counsel at his arraignment, thus violating his sixth amendment right to counsel as defined in *Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986).

Respondent answers that Petitioner did not request counsel within the meaning of *Jackson*, and so waived his sixth amendment right to counsel by virtue of the holding in *Patterson v. Illinois*, 487 U.S. 285, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988).

Respondent also suggests that the posture of this case will cause us to reconcile the *Jackson* and *Patterson* cases.

The factual background of this case goes back to January 28, 1988, when Petitioner and two buddies made a pre-dawn invasion of the home of Paul and Mary Hoots in Scott County, Illinois. Two of the three intruders, armed with a handgun, entered the Hoots' residence, tied them up, and took items from the house including a VCR, a small wooden chest containing silverware, watches, a ring, a pillowcase, and cash. The intruders left behind, though, a flashlight and some footprints.

Petitioner was arrested for the home invasion on February 18, 1988, and at his trial, *inter alia*, testimony established that the footprint found at the Hoots residence could have been made by shoes belonging to Petitioner, and also that a fingerprint found on the flashlight left at the Hoots home was that of Petitioner. The trial evidence also included post-arrest statements made by Petitioner to Sergeant John Yelliott on February 22, and to Officer Jerry Lieb on February 25. The jury returned verdicts of guilty against Petitioner, upon which judgment was entered for the offenses of theft over $300, armed robbery, residential burglary, and armed violence. (Later, the residential burglary conviction was vacated by the appellate court).

The statements made by Petitioner to Sergeant Yelliott and to Officer Lieb create the issue in this case. Following his February 18 arrest, Petitioner was arraigned on February 22. During the arraignment, this dialogue ensued before Judge Mann:

COURT: Mr. Farrell, you, as is true with regard to every man, are entitled to be represented by a lawyer at all future stages. You're entitled to have a lawyer at the preliminary hearing, and if probable cause is found, you're entitled to have a lawyer when I ask how you plead. And of course, if you plead not guilty, you're entitled to have a lawyer at the trial in which case, or at which time, the question of guilty or innocence on these charges will be determined.

In the traditional sense, the right to a lawyer means a right to a lawyer whom you'd select, one you'd pick out, a lawyer in whose ability and integrity you have confidence. Oftentimes, we find that men in your position don't have money enough, or financial resources enough, to hire a lawyer of their own choice, and if that's true, and if they make request for it, a public defender is appointed, but traditionally, a man such as you has a right to say, "I want to hire John Doe," or whatever his name is. "I know him, or I've heard of him. I believe he's a good lawyer. I'm persuaded that he's a good lawyer, and I'm sure he'll work for me," and if you intend, of course, to hire

a lawyer of your own selection, you may do so. On the other hand, as I said, if you haven't got the money, we'll see that you have a public defender, and he'll be an experienced and competent defense attorney.

Do you understand me?

DEFENDANT: Yeah.

COURT: You going to hire a lawyer, Mr. Farrell?

DEFENDANT: Yes, sir.

COURT: Sir?

DEFENDANT: Yes, sir.

COURT: All right. Are you in a position at this time to tell me his name?

DEFENDANT: Not at the moment, no.

COURT: All right. How soon, Mr. Robinson [the prosecuting attorney], can the State be ready for preliminary hearing?

PROSECUTOR: We could do a preliminary Friday if the Court wishes.

COURT: It may not give Mr. Farrell time enough with his lawyer, and once again, Mr. Farrell, I'm not trying to be smart with you. You don't have to tell me anything. You have an absolute right to remain silent if you want to. Make every effort as promptly as possible to have someone in your acquaintance contact this lawyer whom you hope to employ. We don't like to make unnecessary trips back and forth to wherever you're detained, and [it's] probably no picnic for you to come down here handcuffed, so make an effort to get this guy or woman, I suppose it would be a man, however, if it is a defense lawyer, lined up in plenty of time for the preliminary hearing. It'll save you unnecessary trips down here and save the county the necessity to send a deputy up for you.

Later that day, on February 22, Sergeant Yelliott visited Petitioner at the jail, and fully advised him of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and additionally had Petitioner sign a card attesting to having been advised of those rights. Sergeant Yelliott then interviewed Petitioner and obtained statements used against him at trial. Three days later, Petitioner was again interviewed, this time by Officer Lieb, who also informed Petitioner of his constitutional rights and had Petitioner sign a statement to that effect; more statements were made which were later used against Petitioner.

Petitioner never did retain counsel. On March 4, 1988, his preliminary hearing was held, and the court appointed a public defender to represent Petitioner at that hearing. Following that hearing, the appointment of the public defender was vacated (due to a potential conflict of interest), and Judge Mann again engaged Petitioner in a dialogue concerning counsel:

COURT: Mr. Farrell, I'm going to vacate the appointment of the Public Defender Mr. Cherry with regard to your case. I don't want to suggest that you have no right still to employ counsel of your own choice. You have that right. You told me when you were in court that you would be doing that. I see that you have him not, from which I infer that you've not been able to employ counsel. Am I correct?

DEFENDANT: Yes, sir.

COURT: Is that because you lack financial resources by means of which to do so?

DEFENDANT: No, it's because, okay. Where they got me housing with county, I only have like three minutes to use the phone, you know, and every time I try to call this office, you know, I'm getting busy signals or whatever, and then when I try to call them last week, you know, he wasn't in his office for a couple of days.

COURT: Well, you're incarcerated where? Pittsfield?

DEFENDANT: Yes, sir.

COURT: Mr. Robinson and Mr. Sheriff Lawson, will you see that this man has an adequate opportunity within the next few days to call the attorney whom he hopes to employ for him?

Now, if you're not able to employ a lawyer, I want to know it, Mr. Farrell, because I want to appoint another lawyer, a competent lawyer, to defend you at the public's cost. You hear me?

DEFENDANT: Yes, sir.

COURT: All right. As of now, however, you still intend to employ counsel of your own selection?

DEFENDANT: Yes, sir.

Thereafter, Petitioner having never retained counsel, an attorney was appointed to represent him, and his trial commenced on May 2, 1988. Prior to the beginning of the jury trial, Petitioner argued a motion to suppress the statements made to Sergeant Yelliott and Officer Lieb; Judge Mann denied the motion to suppress, and the statements were introduced as substantive evidence in the state's case in chief.

Petitioner took a direct appeal of his conviction, and argued to the appellate court of Illinois that his motion to suppress should have been allowed. In a published opinion authored by Justice Lund, the Appellate Court of Illinois affirmed the denial of the motion to suppress. *People v. Farrell*, 181 Ill.App.3d 446, 129 Ill.Dec. 636, 536 N.E.2d 476 (4th Dist.1989). A petition for Leave to Appeal was filed with the Illinois Supreme Court, but was denied in an unpublished order on June 1, 1989. A Petition for Writ of Certiorari was filed in the United States Supreme Court and it was denied on October 2, 1989, — U.S. ——, 110 S.Ct. 202, 107 L.Ed.2d 155; *but see McMonagle v. Northeast Women's Center, Inc.*, — U.S. ——; 110 S.Ct. 261, 263–64, 107 L.Ed.2d 210 (1989) (White, J., dissenting) (arguing that certiorari should have been granted in this case).

The issue therefore has arrived at our doorstep intact, and fully ripe for our review. Indeed, Respondent concedes that Petitioner has exhausted his state court remedies with regard to this issue. We therefore now turn our attention to the issue.

■ As above noted, the prosecution used the two statements in its case in chief. Had the statements only been used to impeach Petitioner's trial testimony, their admissibility would be clear, even if they were taken in violation of *Michigan v. Jackson* and Petitioner's sixth amendment rights. *Michigan v. Harvey*, — U.S. ——, 110 S.Ct. 1176, 108 L.Ed.2d 293 (1990). Similarly, the parties agree that this case is not about Petitioner's fifth amendment rights to the assistance of counsel during interrogation, but rather concerns only his sixth amendment right to the assistance of counsel following the initiation of formal criminal proceedings against him. *See Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). Petitioner clearly had a right to the representation of counsel following his arraignment, *see Farrell*, 181 Ill.App.3d at 450, 129 Ill.Dec. at 639, 536 N.E.2d at 479; here, the issue is whether Petitioner exercised those rights by asserting his intention to have counsel present to represent him, or whether he never asserted his sixth amendment rights and his statements following the complete *Miranda* warnings act as a waiver of those rights. *Compare Jackson*, 475 U.S. 625, 106 S.Ct. 1404, with *Patterson*, 487 U.S. 285, 108 S.Ct. 2389.

■ Finally, we preliminarily note that there is some dispute between the parties as to the purpose of Officer Lieb's contact with Petitioner. Officer Lieb, at the suppression hearing, testified that he approached Petitioner to ask about a matter other than the home invasion, but that during the course of the conversation Petitioner made statements regarding the home invasion. Petitioner now intimates that the "other matter" first addressed by Officer Lieb was no more than a ruse, and that he was searching for information concerning the home invasion all along. For our purposes, though, the distinction is irrelevant; if Petitioner effectively invoked his sixth amendment rights for purposes of the home invasion charges, he did so as well for any other charges while in custody. *Arizona v. Roberson*, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988); *United States ex rel. Espinoza v. Fairman*, 813 F.2d 117 (7th Cir.), *cert. denied*, 483 U.S. 1010, 107 S.Ct. 3240, 97 L.Ed.2d 745 (1987).

■ The issue presented by this petition flows first from the ruling in *Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986). In *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the Court held that the

fifth amendment privilege against compelled self-incrimination required that once a suspect expresses a "desire to deal with the police only through counsel," he may not be further interrogated until counsel is made available unless he himself initiates further communication. *Edwards* announces a bright-line rule: any further interrogation after the suspect has invoked his fifth amendment privilege cannot be used against him, unless he initiated the conversation himself. In *Jackson* the prophylactic rule of *Edwards* was transposed to a sixth amendment case; the *Jackson* Court held that a defendant whose sixth amendment rights have attached, and who has asserted his right to counsel, may not waive that sixth amendment right in any subsequent police-initiated interrogation. Finally, and most recently, in *Patterson v. Illinois*, 487 U.S. 285, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988), the Court held that the *Jackson* rule is only applicable when the accused has actually asserted his right to the representation of counsel. The tension between the *Jackson* and *Patterson* cases defines the issue facing this Court: we must decide whether Petitioner "asserted" his sixth amendment right to representation prior to the questioning of Sergeant Yelliott and Officer Lieb; if he did assert that right, then *Jackson* commands that the *Miranda* warnings provided by both officers were ineffective, and his conviction, based in part upon testimony concerning those interviews, must be vacated. On the other hand, if Petitioner did not assert his sixth amendment right to counsel, then we must decide whether the *Miranda* warnings effectively waived those rights by utilizing the inquiry adopted in *Patterson.*

Following the *Jackson* case, two appellate court decisions were rendered which lend direct support to Petitioner's position. In *Wilson v. Murray*, 806 F.2d 1232 (4th Cir.1986), *cert. denied*, 484 U.S. 870, 108 S.Ct. 197, 98 L.Ed.2d 149 (1987), the defendant informed the court, at arraignment, that he intended to retain counsel of his choice; thereafter, though, but before the defendant had arranged for representation, the police initiated further discussions with the defendant. The Fourth Circuit held invalid the conviction, which was based in part upon statements made at that interrogation, and stated that

> [the] case falls squarely within the rule of *Michigan v. Jackson. Petitioner asserted his right to counsel at arraignment,* but before he could consult with his attorney, police initiated an interrogation and obtained a statement from him. Even if his statement was voluntary, in the sense that word is normally used, it was obtained in contravention of the bright-line rule of *Michigan v. Jackson:* Once the right to counsel is invoked at arraignment, subsequent waiver is invalid.

*Id.* at 1238 (emphasis added).

Likewise, in *Fleming v. Kemp*, 837 F.2d 940, 947 (11th Cir.1988), *cert. denied sub nom Fleming v. Zant*, ⸺ U.S. ⸺, 109 S.Ct. 1764, 104 L.Ed.2d 200 (1989), the defendant appeared before a Justice of the Peace and informed him "that he would get his own attorney rather than have the state appoint one for him," but three days later the police initiated an interrogation and obtained statements which were used against the defendant at trial. The state argued before the Eleventh Circuit that "because Fleming only said he was going to get his own attorney, Fleming did not 'assert' his right to counsel," and distinguished *Jackson* by pointing out that the defendants there had requested that counsel be appointed for them. The *Fleming* court was unmoved:

> This argument is without merit. In *Jackson*, the Court noted that courts should "give a broad, rather than a narrow, interpretation to a defendant's request for counsel—[courts should] presume that the defendant requests the lawyer's services at every critical stage of the prosecution." Fleming's invocation certainly fits within this broad interpretation, especially because invoking the right to counsel indicates that the defendant recognizes that he cannot deal with his adversaries singlehandedly.

*Id.* (citation omitted).

■ We disagree with the Fourth and Eleventh Circuits that the mere unadorned

affirmative answer to a judge's query as to whether the defendant intends to hire his own lawyer instead of accepting appointed counsel amounts to an affirmative assertion of his sixth amendment right, and especially do we disagree in light of the limitations the *Patterson* decision placed upon the broad language of *Jackson*. We therefore find that Petitioner never invoked his sixth amendment rights, and so was able to, and did, waive those rights during the two interrogations.

■ The *Patterson* case makes clear that the mere attachment of a defendant's sixth amendment rights is not enough to firmly establish the applicability of the *Jackson* rule—rather, a defendant must *assert*, in some positive manner, his intention to deal with the authorities from thence forward only with the aid of legal counsel. The *Patterson* defendant, while in custody, was indicted for a murder, and so he had a sixth amendment "right to have the assistance of counsel at his postindictment interviews with law enforcement authorities." 487 U.S. at 290, 108 S.Ct. at 2393 (citations omitted). Nevertheless, the defendant made lengthy statements to authorities on two occasions prior to requesting assistance of counsel; on both occasions he was fully informed of his *Miranda* rights. On these facts, the Court dismissed the defendant's argument that the mere ripening of the sixth amendment rights brought *Jackson* into play and foreclosed any additional police-initiated questioning, noting that he

at no time sought to exercise his right to have counsel present. The fact that [his] Sixth Amendment right came into existence with his indictment; *i.e.*, that he had such a right at the time of his questioning, does not distinguish him from the preindictment interrogatee whose right to counsel is in existence and available for his exercise while he is questioned.

487 U.S. at 290–91, 108 S.Ct. at 2394. Moreover, the *Patterson* court noted that the *Jackson* ruling had "turned on the fact that the accused 'ha[d] asked for the help of a lawyer' in dealing with the police." *Id.* at 291, 108 S.Ct. at 2394 (quoting *Jackson*, 475 U.S. at 631, 106 S.Ct. at 1408).

In our case, though, as in *Patterson*, the Petitioner never affirmatively asserted his intention to deal with the authorities only with the aid of counsel. Instead, he told the trial judge that he did not want appointed counsel, but that at some time he intended to contact some unnamed attorney. Given the monosyllabic and unadorned responses of Petitioner to the judge's questioning concerning the retention of counsel, we cannot say that this record indicates an assertion of his sixth amendment right to counsel. *See United States v. Scarpa*, 897 F.2d 63, 67–70 (2d Cir.1990).

Other factors considered in *Patterson* apply equally here. For instance, here, as in *Patterson*, "[h]ad [P]etitioner indicated he wanted the assistance of counsel, the authorities' interview with him would have stopped, and further questioning would have been forbidden (unless [P]etitioner called for such a meeting)." 487 U.S. at 291, 108 S.Ct. at 2394. So, too, do we find noteworthy the emphasis *Patterson* placed, after noting that the accused "had not retained, or accepted by appointment, a lawyer to represent him at the time he was questioned by authorities," that "[o]nce an accused has a lawyer, a distinct set of constitutional safeguards aimed at preserving the sanctity of the attorney-client relationship takes effect." 487 U.S. at 290 n. 3, 108 S.Ct. at 2393 n. 3. And although the *Patterson* Court noted that "the analysis changes markedly once an accused even *requests* the assistance of counsel," *id.* (emphasis in original), here no such request was made. We therefore find this reasoning of *Patterson* dispositive:

Preserving the integrity of an accused's choice to communicate with police only through counsel is the essence of *Edwards* and its progeny—not barring an accused from making an *initial* election as to whether he will face the State's officers during questioning with the aid of counsel, or go it alone. If an accused "knowingly and intelligently" pursues the latter course, we see no reason why the uncounseled statements he then makes must be excluded at his trial.

487 U.S. at 291, 108 S.Ct. at 2394 (emphasis in original).

Our view of this case is also bolstered by recent pronouncements from the Seventh Circuit. In *Quadrini v. Clusen*, 864 F.2d 577 (7th Cir.1989), for instance, the defendant, whose sixth amendment rights had attached, was informed of his *Miranda* rights, after which he "specifically replied that he did not want an attorney present despite the fact that after his court appearance earlier that day he had been told by an investigator from the public defender's office that he should not make a statement." 864 F.2d at 579. The defendant then made incriminating statements. About an hour and a half later, after a supervising police officer had arrived, the police again questioned the defendant. After they entered, the defendant "took the business cards of the public defender and his investigator from his pocket and displayed the cards on the table," *id.* at 580, but made no other comment about counsel. The police then interviewed him, and he made more incriminating statements. The Seventh Circuit held that this behavior did not invoke defendant's right to counsel; the court expressly agreed with earlier state court determinations that "the display of the business cards and the content of the accompanying statement were insufficient to invoke the petitioner's right to counsel." *Id.* at 582–83.

Juxtaposed with our case, *Quadrini* adds support to our conclusion that Petitioner did not invoke his right to counsel. In neither case did the accused expressly request the assistance of a lawyer; in *Quadrini*, though, the defendant displayed a lawyer's business card to the interviewing officers, but they ignored the cards and went on with the interview. So much the less here—Petitioner made no overt, affirmative remarks about counsel, but instead simply answered "yes" when asked whether he intended at some point to retain counsel.

*United States v. Carrasco*, 887 F.2d 794 (7th Cir.1989), similarly supports our decision. There, the defendant's sixth amendment rights had ripened because an indictment had been handed down; the defendant, however, was not informed of the indictment but only that he was accused of the crimes involved, and so he was unaware of the existence of his sixth amendment rights. Moreover, the defendant spoke English very little, and although an arresting agent spoke some Spanish, the communication to the defendant of his *Miranda* rights was less than perfect. Nevertheless, the Seventh Circuit ruled that statements made by the defendant under these circumstances were admissible against him, and were not subject to suppression on *Jackson* grounds. In the case at bar, Petitioner knew full well the extent of the state's authority arrayed against him, and the trial judge fully and explicitly informed Petitioner of his constitutional rights. And yet Petitioner never requested the assistance of counsel, or intimated that he chose to proceed only with a lawyer's advice—instead, he merely suggested that at some future time he would approach counsel of his own choosing rather than then accepting potluck from the state's stable of defense counsel available for appointment. This simply does not amount to an invocation of Petitioner's sixth amendment rights.

Finally, we find instructive the Seventh Circuit's view of the *Jackson* case announced in *United States v. Rodriguez*, 888 F.2d 519, 526 n. 5 (7th Cir.1989): "*Jackson* establishes a special rule for the period after the appointment of counsel." Counsel was neither appointed nor retained here—indeed, no request was made for counsel at all.

It is also notable that the Eleventh Circuit has apparently backed off from its broad ruling in *Fleming*, 837 F.2d 940. In *Smith v. Dugger*, 840 F.2d 787, 793–94 (11th Cir.1988), *cert. denied*, —— U.S. ——, 110 S.Ct. 1511, 108 L.Ed.2d 647 (1990), the court made this ruling:

The transcript of Smith's arraignment reveals that Smith in no way requested an attorney. Rather, after being informed of the charges against him and his *Miranda* rights, Smith stated that he did not have an attorney, "but I plan to get one." Thus, no attorney was ap-

pointed for Smith at his arraignment. The record indicates that Smith had consulted with an attorney prior to the arraignment, but Smith never officially retained this attorney or any other prior to the taking of his post-arraignment statements.

So, too, with our case. *See also Boles v. Foltz*, 816 F.2d 1132, 1135 (6th Cir.), *cert. denied*, 484 U.S. 857, 108 S.Ct. 167, 98 L.Ed.2d 121 (1987), where in a fifth amendment context the court held that where, at arraignment, an accused "stated that he had an attorney and that he wanted that attorney present at the preliminary hearing," nevertheless "[h]is statements did not express 'his desire to deal with the police only through counsel.'" (quoting *Edwards v. Arizona*, 451 U.S. at 484, 101 S.Ct. at 1885).

We therefore find that Petitioner did not assert his sixth amendment right to representation of counsel, or in any way request the assistance of counsel, but instead only voiced an intention to retain counsel at some future time. Since Petitioner in no way "expressed his desire to deal with the police only through counsel," *Edwards*, 451 U.S. at 484–85, 101 S.Ct. at 1885, the *Edwards* rule, applied to sixth amendment cases via *Jackson*, does not apply.

 The next question is whether the reading to Petitioner of his *Miranda* rights, along with the Petitioner's signing of statements attesting to having been read those rights, accomplished a "knowing and intelligent" waiver of his sixth amendment right to representation, *Patterson*, 487 U.S. at 292, 108 S.Ct. at 2394–95, or more precisely whether Petitioner, "who waived his Sixth Amendment rights during postindictment questioning, [was] made sufficiently aware of his right to have counsel present during the questioning, and of the possible consequences of a decision to forego the aid of counsel?" *Id.* at 292–93, 108 S.Ct. at 2395.

Once again *Patterson* disposes of the issue—because our case and the *Patterson* case both involved postindictment questioning, and "[b]ecause the role of counsel at questioning is relatively simple and limited, [there is] no problem in having a waiver procedure at that stage which is likewise simple and limited." 108 S.Ct. at 2399. Here, as in *Patterson*, "the *Miranda* warnings given [P]etitioner made him aware of his right to have counsel present during questioning," and further, "the *Miranda* warnings also served to make [P]etitioner aware of the consequences of a decision by him to waive his Sixth Amendment rights during postindictment questioning." 487 U.S. at 293, 108 S.Ct. at 2395.

Petitioner therefore was in a position to waive his sixth amendment right to representation during the questioning by Sergeant Yelliott and by Officer Lieb, and Petitioner did knowingly and intelligently waive those rights. His application for a writ of habeas corpus is therefore denied.

*Ergo*, Petitioner's motion for relief under § 2254 is DENIED.

Case CLOSED.