THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MINNIE WHEELER, Defendant-Appellant.

Second District   No. 2—90—0390

Opinion filed April 16, 1992.—Rehearing denied May 8, 1992.

G. Joseph Weller and David W. Devinger, both of State Appellate Defender's Office, of Elgin, for appellant.

Gary V. Johnson, State's Attorney, of Geneva, and Donald B. MacKay, of Downers Grove (John X. Breslin, William L. Browers, and Mary Beth Burns, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE INGLIS delivered the opinion of the court:

Following a bench trial, Minnie Wheeler, defendant, was found guilty of 10 counts of forgery. She was sentenced to 30 months' probation and ordered to pay a $1,500 fine. On appeal, she argues that the trial court erred by (1) denying her motion to suppress certain statements taken from her subsequent to an alleged violation of her constitutional right to counsel; and (2) improperly shifting the burden of proof to her, rather than the State, on her motion to suppress. The State argues that defendant made a voluntary, knowing and intelligent waiver of her right to counsel, and that the trial court properly placed the initial burden of proof on the State when deciding defendant's motion. We affirm.

On April 13, 1989, defendant was charged with 10 counts of forgery in violation of section 17—3(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1989, ch. 38, par. 17—3(a)). The Kane County State's Attorney filed the charges by way of a form entitled "COMPLAINT FOR PRELIMINARY HEARING." The charges regard defendant's involvement in a scheme involving 10 forged checks that totalled $8,100 and which were drawn from another individual's checking account at a bank in Aurora.

On October 5, 1989, a hearing was held on defendant's motion to suppress certain statements she made to the Aurora police subsequent to her alleged requests to see her attorney. Detective Gregory Anderson of the Aurora police, the officer who interviewed defendant, and defendant testified at the hearing.

Defense counsel first called Detective Anderson, who testified that he arrested defendant at her apartment pursuant to an arrest warrant on April 25, 1989. Anderson interviewed defendant at the Aurora police station at about 1:30 p.m. that day. He advised defendant that she had been charged with 10 counts of forgery. He then read defendant her *Miranda* warnings from a preprinted form, which was apparently offered into evidence but which is not in the record on appeal. Defendant told Anderson that she understood them. Anderson then asked defendant to read the first warning aloud, which she did. He then told her that if she understood it, to initial it, which she did. He also told her to read the rest of the warnings to herself and to initial them if she understood them, to read the two waiver statements, and to sign the form. Anderson then watched as she initialed each of the remaining three warnings. He then conducted a 30- to 45-minute conversation with defendant, during which time she made certain incriminating statements.

According to Anderson, defendant initially denied any involvement in the offenses charged and told the detective that she was afraid to talk to him because she thought "her attorney would be mad at her." Anderson asked her what she meant, and defendant stated "that if she talked to [Anderson] that her attorney would not represent her." Anderson responded by telling defendant that "the attorney was on her side and he would stand behind her." According to Anderson, defendant never told him that she wished to cease the questioning; she never told him that she wished to have an attorney present; she never asked him to contact her attorney; and she never asked to call her attorney. The trial judge personally questioned Anderson regarding whether defendant ever told him that she did not want to answer any questions or whether she ever asked to speak

with her attorney. Anderson repeated his previous testimony that defendant never stated that she did not want to answer questions and never asked for her attorney.

Defendant's testimony at the suppression hearing is as follows. Detective Anderson and defendant were alone in the interview room. Anderson began to ask questions and defendant asked for her attorney. Anderson then told defendant "I know you didn't do this ***, you may have been with them but I know that you didn't do this. There is a master mind behind it." Defendant stated that she was crying and, for the second time, asked for her lawyer. She told Anderson that "I can't talk to you because my lawyer will be mad."

According to defendant, Anderson then read her the *Miranda* rights waiver form, had her read it and asked her to initial each line after she read it. Defendant objected to signing the form. Anderson explained the form to her again, and defendant eventually signed it. After signing the form, defendant began crying and said "[n]o, I'm not going to say anything. I'm not going to say anything." Anderson kept asking her questions and inquired if her sister Mary Ann was involved.

Defendant further stated at the suppression hearing that she asked for her lawyer at least four times during her interview with Detective Anderson. She also claimed that she was not allowed to make a telephone call, even though she had asked to call her lawyer. Defendant testified that Anderson promised that if she helped him, he would be with her in the morning when she went before the judge and that she would not be prosecuted. Defendant stated that she signed the *Miranda* form only after Anderson told her that it meant that she had been read her rights and understood them, not that she was waiving them.

Detective Anderson was then called to testify on behalf of the State. Anderson acknowledged that he knew defendant's attorney's name. He also admitted that he was aware of defendant's initial reluctance to talk with him, but continued to interview her.

After arguments from counsel, the trial judge took the suppression matter under advisement. On December 15, 1989, the trial judge denied defendant's motion to suppress. The trial judge indicated that while defendant stated that she asked for an attorney numerous times during the course of the interview, Detective Anderson stated otherwise. The trial judge stated that the transcripts did not truly reflect defendant's testimony in that "her demeanor while she was on the stand *** was vague, she was halting, she was uncertain." By deny-

ing defendant's motion, the trial judge clearly found Detective Anderson's testimony more convincing.

On January 23, 1990, a stipulated bench trial was held. Stipulations were presented by the prosecution, and the court found defendant guilty on all counts. At a sentencing hearing held on March 29, 1990, defendant was ordered to serve a 30-month term of probation and pay a $1,500 fine. This timely appeal followed.

## RIGHT TO COUNSEL

We first address defendant's argument that the trial court erred by denying her motion to suppress certain statements that she made subsequent to an alleged violation of her sixth amendment right to counsel and, in the alternative, her fifth amendment right to counsel. We note that "[i]n reviewing a ruling on a motion to suppress, a reviewing court's analysis is limited; we must determine whether the circuit court's finding was against the manifest weight of the evidence." (*People v. Reid* (1990), 136 Ill. 2d 27, 56.) In addition, on a motion to suppress, it is the trial court's duty to resolve conflicting evidence and determine the credibility of the witnesses. *People v. Case* (1991), 218 Ill. App. 3d 146, 154; see *People v. Clark* (1986), 114 Ill. 2d 450, 459-60.

Since it is not the function of an appellate court to gauge the credibility of the witnesses at a suppression hearing, as defendant apparently wants us to, we will accept Detective Anderson's version of the facts since that is plainly what the trial court did. Under either a sixth amendment analysis or a fifth amendment analysis, this case will therefore turn on whether we find that defendant's statement to Detective Anderson that she was afraid that her attorney "would be mad at her" or that "if she talked to [Anderson] that her attorney would not represent her" constituted a request for an attorney. We begin with a sixth amendment analysis.

■ The sixth amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall *** have the Assistance of Counsel for his defence." (U.S. Const., amend. VI.) The Illinois Supreme Court stated in *People v. Hayes* (1990), 139 Ill. 2d 89:

"A person's sixth amendment right to counsel attaches only after adversary judicial criminal proceedings have been initiated against him, whether by way of a formal charge, preliminary hearing, indictment, information, or arraignment. [Citations.] The sixth amendment's right to counsel guarantee assures that the accused receives the assistance of counsel when confronted with 'the intricacies of the law and the advo-

cacy of the public prosecutor' at trial. [Citation.] It also ensures that the defendant receives the assistance of counsel at certain 'critical' preindictment proceedings, where the accused is confronted by the procedural system, an expert adversary or both, and where the results of the confrontation might determine the defendant's fate and make the trial itself a mere formality." *Hayes*, 139 Ill. 2d at 123.

See *McNeil v. Wisconsin* (1991), 501 U.S. 171, 175-79, 115 L. Ed. 2d 158, 166-69, 111 S. Ct. 2204, 2207-09.

The *Hayes* court then held that whether an accused's sixth amendment right to counsel attaches upon the filing of a criminal complaint depends on "the degree to which the State's prosecutorial forces have focused upon the accused." (*Hayes*, 139 Ill. 2d at 125.) In *Hayes*, the prosecutor reviewed the criminal complaint against the defendant before it was filed in the circuit court. However, the supreme court determined that the "prosecutor's involvement in the procurement of the warrant *** was not significant and did not signal a commitment by the State to prosecute the defendant." (*Hayes*, 139 Ill. 2d at 125-26.) In so finding, the court relied on two facts: first, that the complaint for preliminary examination was presented in an *ex parte* proceeding by a police officer, rather than an assistant State's Attorney; and second, that the complaint for preliminary examination, upon which the warrant was issued, charged the defendant with the offense of attempted armed robbery rather than the murder of which the defendant was ultimately convicted.

Similarly, in *People v. Thompkins* (1988), 121 Ill. 2d 401, the court held that the defendant's sixth amendment right to counsel had not attached following his arrest pursuant to an arrest warrant, because adversary judicial proceedings had not been initiated against him. The court noted that only a complaint for preliminary examination charging the defendant with murder had been issued and the defendant had been neither indicted nor arraigned. (*Thompkins*, 121 Ill. 2d at 433.) It is not clear whether the State's Attorney in *Thompkins* personally filed the complaint in court.

■ Pursuant to the holdings in *Hayes* and *Thompkins*, we conclude that in this case the complaint for preliminary hearing did not constitute a commitment by the State to prosecute the defendant and that the defendant's sixth amendment right to counsel therefore had not attached at the time she was interviewed by Detective Anderson. We note that at the time of the interview the defendant had not been arraigned, charged by information or indicted. While defendant argues that the Kane County State's Attorney himself filed the com-

plaint, we do not believe that fact alone rises to the level of adversarial proceedings necessary for the sixth amendment right to counsel to attach. We conclude that when defendant was interviewed on April 25, 1989, her sixth amendment right to counsel had not yet attached.

We next consider the trial court's denial of defendant's motion to suppress under a fifth amendment analysis. The fifth amendment provides, in pertinent part, that "[n]o person shall *** be compelled in any criminal case to be a witness against himself." (U.S. Const., amend. V.) The Illinois Supreme Court stated in *People v. Patterson* (1992), 146 Ill. 2d 445:

> "In *Miranda*, the United States Supreme Court held that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, his fifth amendment privilege against self-incrimination is jeopardized. (U.S. Const., amend. V; *Miranda*, 384 U.S. at 478, 16 L. Ed. 2d at 726, 86 S. Ct. at 1630.) Procedural safeguards must be put into effect to protect the privilege; the individual must be warned prior to questioning that he has the right to remain silent, that anything he says can be used against him in court, that he has the right to an attorney, and that if he cannot afford an attorney one will be provided for him prior to questioning if he so desires. [Citation.] In the absence of a *Miranda* warning or waiver, no evidence obtained as a result of interrogation can be used against the individual." *Patterson*, 146 Ill. 2d at 450-51.

See *McNeil*, 501 U.S. at 176-79, 115 L. Ed. 2d at 167-69, 111 S. Ct. at 2208-09.

Our supreme court spoke to the issue of waiver of *Miranda* rights in *People v. Thompkins* (1988), 121 Ill. 2d 401:

> "[T]hese rights may nevertheless be validly waived where, with full awareness and comprehension of all the information [that] *Miranda* requires the police to convey, the defendant voluntarily decides to speak. [Citation.] The waiver must be voluntarily made, constituting a knowing and intelligent relinquishment of a known right. [Citations.] Furthermore, once an accused has been advised of his rights and indicates that he understands them, his choosing to speak and not to request counsel is evidence that he knows his rights and chooses not to exercise them." (*Thompkins*, 121 Ill. 2d at 433-34.)

The State has the burden at a suppression hearing of proving, by a preponderance of the evidence, that defendant voluntarily made the statements in question. *People v. Reid* (1990), 136 Ill. 2d 27, 56.

■ We cannot agree with defendant that her telling Detective Anderson that her attorney "would be mad at her" or that "if she talked to [Anderson] that her attorney would not represent her" constituted the invocation of her fifth amendment right to counsel. In *People v. Sommerville* (1990), 193 Ill. App. 3d 161, this court addressed a similar argument. There, the defendant argued that he invoked his right to counsel when he asked a friend, allegedly in the presence of the arresting officers, "to call my attorney." We disagreed. While noting that under *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, a defendant invokes his fifth amendment protection when he asserts "in any manner and at any stage of the [proceeding]" his right to counsel, we concluded that not every reference to an attorney constitutes an invocation of the right to counsel. (*Sommerville*, 193 Ill. App. 3d at 169.) We based our decision on previous decisions including *People v. Evans* (1988), 125 Ill. 2d 50, 75-76 (an inquiry into the availability of an attorney did not constitute an invocation of defendant's right to counsel); *People v. Krueger* (1980), 82 Ill. 2d 305, 311 ("[m]aybe I need a lawyer" did not constitute an effective request for counsel; the court noted that simply referring to an attorney, no matter how vague, indecisive, or ambiguous, does not automatically constitute an invocation of the right to counsel); *People v. Farrell* (1989), 181 Ill. App. 3d 446, 451 (defendant's intention to retain some unnamed attorney was an ambiguous assertion of his right to counsel); and *People v. Tackett* (1986), 150 Ill. App. 3d 406, 419 (defendant's statements "I might be needing [an attorney]" and "I probably should" after he was told he could speak to an attorney did not constitute an effective invocation of the right to counsel). (*Sommerville*, 193 Ill. App. 3d at 169.) In this particular case, we conclude that while defendant may have referred to her attorney during the interview, she did not invoke her fifth amendment right to counsel.

■ Furthermore, the record shows that during the interview defendant acknowledged that she understood each of her *Miranda* rights by her initialing each right on the preprinted form that Detective Anderson provided her. We are mildly concerned that this preprinted form that defendant initialed was not made part of the record on appeal. The undisputed testimony from both defendant and Detective Anderson shows that after she initialed each right and signed the waiver at the bottom of the form, she spoke with Detective Anderson. We therefore believe the record shows defendant waived her fifth amendment right to remain silent and to have the assistance of coun-

sel at her April 25, 1989, interview with Anderson. See *Thompkins*, 121 Ill. 2d at 434.

We therefore conclude that the trial court order denying defendant's motion to suppress statements made at the April 25, 1989, interview was not against the manifest weight of the evidence.

## BURDEN OF PROOF

We next address defendant's argument that the trial court erred during the suppression hearing by shifting the burden of proof to defendant, rather than the State, thereby denying her the fundamental right to due process.

■■ Even though the State has not presented a waiver argument on this issue, we note that defendant failed to object at trial or to raise the burden of proof issue in her post-trial motion. Our supreme court stated in *People v. Reid* (1990), 136 Ill. 2d 27, that "waiver rules serve at least two purposes. First, timely objections allow the circuit court to promptly correct any error. [Citation.] Second, a party who fails to object cannot obtain the advantage of receiving a reversal by failing to act." (*Reid*, 136 Ill. 2d at 38.) We conclude that defendant has waived our consideration of this issue. See *People v. Enoch* (1988), 122 Ill. 2d 176, 186-88; Ill. Rev. Stat. 1989, ch. 38, par. 116—1(c).

Even if we were to review the issue under a plain error analysis pursuant to Supreme Court Rule 615(a) (134 Ill. 2d R. 615(a)), as defendant urges us to, we find no error by the trial court.

■■ It is well established that the State has the burden at a suppression hearing to prove, by a preponderance of the evidence, that defendant's statements were voluntarily given. (*Reid*, 136 Ill. 2d at 56; *People v. Sommerville* (1990), 193 Ill. App. 3d 161, 168.) Our supreme court stated in *Reid* that "[o]nce the State has established its *prima facie* case, the burden shifts to defendant to show that his waiver was not knowing, intelligent or voluntary. [Citations.] The circuit court may, in its discretion, reverse the order of proof so that defendant presents his or her evidence first." *Reid*, 136 Ill. 2d at 51.

Defendant refers to the following comments made by the trial judge when he denied defendant's motion to suppress:

> "And if I recall her demeanor when she was on the stand, she was vague, she was halting, she was uncertain. And the transcript looks real good, but not from what I recall.
>
> Based on her testimony as well as the police *I don't think that you've established it by a preponderance*." (Emphasis added.)

The State responds by citing to an earlier comment by the trial judge:

"I'm kind of in a quandry [*sic*] on this. This is a motion to suppress a statement. Basically *it's the State's burden.*" (Emphasis added.)

We have reviewed both comments in the context of the entire suppression hearing transcript and agree with the State that no error occurred. We find that the trial judge properly placed the initial burden of proving a *prima facie* case on the State and then shifted the burden to defendant. (See *Reid*, 136 Ill. 2d at 51.) The trial judge's comment that defendant failed to establish "it by a preponderance" was most likely a shorthand and inartful way of saying that defense counsel had not successfully rebutted the State's *prima facie* case of a voluntary waiver.

The trial court may have confused matters by allowing the defense to put its case first, followed by the State's case. The relevant statute provides that "[t]he burden of going forward with the evidence and the burden of proving that a confession was voluntary shall be on the State." (Ill. Rev. Stat. 1989, ch. 38, par. 114—11(d).) While our supreme court has stated that it does not matter which party goes first (*Reid*, 136 Ill. 2d at 51), we believe that to first allow the State the opportunity to prove a *prima facie* case of a knowing, intelligent and voluntary waiver by defendant, followed by defendant's arguments to the contrary, would more closely track the statute. Nevertheless, we conclude that the trial court did not place the burden of proof on defendant at the suppression hearing and thus find no error in that regard.

The judgment of the circuit court of Kane County is affirmed.

Affirmed.

UNVERZAGT and GEIGER, JJ., concur.